We granted certiorari review to determine whether the Court of Civil Appeals' decision in this case conflicts withSketo v. Sketo, 608 So.2d 759 (Ala.Civ.App. 1992), and Welchv. Welch, 636 So.2d 464 (Ala.Civ.App. 1994). The Court of Civil Appeals, without an opinion, affirmed the trial court's property division in this divorce case. Proctor v. Proctor,696 So.2d 1095 (Ala.Civ.App. 1996) (table). We reverse and remand.
The facts stated here are taken from the statement of facts contained in the petitioner's Ala. R. App. P. 39(k) motion by reference to the "statement of facts" and "argument" portions of her original brief filed with the Court of Civil Appeals. Sheila Proctor and Pastal Lee Proctor were married on January 20, 1967, and lived together as husband and wife until they separated on January 26, 1994. During the course of their marriage, the Proctors together purchased, paid for, and held joint title to their marital home and a 79-acre parcel. Before the marriage, Pastal Lee Proctor had owned a 2-acre *Page 329 
parcel that adjoined the 79-acre parcel; he later conveyed this 2-acre parcel to himself and Sheila Proctor, so that they held title jointly. Thus, they came to be joint owners of the 81 acres.
During the marriage, Sheila Proctor worked as a homemaker and contributed to the couple's income by working 20 to 40 hours a week as a beautician and as a certified nurse's assistant with First American Health Care, Inc. She has a high school education and was 45 years old when she filed this divorce action. Pastal Lee Proctor also has a high school education; when this action was filed, he was 48 years old. He had worked for the Monsanto Company for 30 years and was earning approximately $41,847 a year.
Following the presentation of evidence ore tenus, the trial court, on February 22, 1996, entered a judgment dissolving the marriage upon grounds of incompatibility of temperament. During the trial, the wife contended that the husband had committed adultery, but the trial court did not find sufficient evidence to support her contention. In the divorce judgment, the court divided the Proctors' estate. The wife moved, alternatively, for a new trial or to vacate or amend the judgment, arguing that the trial court had abused its discretion by awarding the marital home and the entire 81-acre estate to the husband without providing for a payment to her for her contribution toward the purchase of the estate. She also argued that the trial court should have given her a portion of the husband's retirement savings, considering that she had no retirement savings of her own.
After the trial court denied her motion, the wife appealed to the Court of Civil Appeals. That court affirmed. She then filed her petition with this Court.
She argues that the trial court's division of the marital estate was in direct conflict with Sketo v. Sketo, supra, andWelch v. Welch, supra. In Sketo, the Court of Civil Appeals reversed the judgment of the trial court and remanded the cause for the trial court to enter an order equitably dividing the parties' property. 608 So.2d at 761. The court wrote:
 "Although the marital home and at least four of six lots were purchased by the husband prior to the marriage, the home was occupied by, and used for the benefit of, both parties. The six lots formed one large parcel of property and were deeded jointly to the wife and the husband. From 1980 until 1987, the parties deposited their incomes into a joint account, from which mortgage payments on the real estate were made. In addition, the wife used the equity from the sale of her previous home to improve the marital home. She worked outside the home and also was primarily responsible for duties within the home."
608 So.2d at 761. Continuing, the court emphasized
 "that joint ownership of the property had been conveyed to the wife, that the property was used for the common benefit of the parties during the marriage, see § 30-2-51, Ala. Code 1975, and that the wife contributed to the payment of the mortgage on the home and two of the lots."
608 So.2d at 761. The Court of Civil Appeals in Sketo indicated that the trial court had awarded the husband property worth $70,000 and had awarded the wife only $2,500 in alimony in gross. Id.
In Welch, the Court of Civil Appeals held that a trial court may consider retirement benefits accumulated during the course of a marriage to constitute marital property, and, therefore, to be subject to equitable division. 636 So.2d at 466-67. The court indicated that an amount represented in a 401(k) plan or in an individual retirement account (IRA) could be awarded as alimony in gross or could be awarded through a survivor's annuity. 636 So.2d at 466.
In the present case, the trial court awarded the wife non-money personal property worth $40,900. This amount included a number of household appliances, a horse, half of the parties' cows and calves, furniture, cooking utensils, dishes, linens, and the equipment used in the wife's beautician business. It may or may not have included also the value of a 1993 Ford Aerostar van. She received the money held in a personal checking account and money in a savings account, *Page 330 
along with a savings bond in her name, the total of which the trial court stated was $28,000; she received an award of $20,000 as alimony in gross; and the court ordered that her health insurance coverage be paid for by the husband for 36 months (at an estimated cost of $7,000.00), the period for which she would be eligible to receive benefits under a COBRA plan administered through the Monsanto Company. She kept her one-half remainder interest in a 45-acre tract of land in which her mother held a life estate; her interest had an estimated value of $22,500. The trial court also held the wife responsible for any outstanding indebtedness incurred in her name, which amounted to an estimated $27,000 from the purchase of a new house and a new office for her beautician business. The trial court ordered that the wife was to have no interest in the husband's retirement account at the Monsanto Company, and she was divested of any interest in the parties' house and 81-acre estate.
The trial court awarded the husband non-money personal property worth $19,050. This property included a 1961 John Deere tractor, a "pull camper," half of the cows and calves, a bull, a stock trailer, farm equipment, and the personal property in his possession, such as a washer and dryer, a refrigerator, a freezer, furniture, kitchen utensils, dishes, and linens. It may or may not have also included the value of a 1992 Ford pickup truck and a 1979 Dodge pickup truck. He received the 81-acre estate, on which were located the marital home, various buildings used for farming purposes, and the wife's office that she had used for her beautician business; this estate had an estimated value of $159,600. He received the money held in his personal savings and checking accounts, which amounted to $15,440; a full interest in his savings accounts with the Monsanto Company, which totalled $61,031; and a full interest in his "fully vested" pension account with the Monsanto Company, which would pay him $1,393 per month if he retired at age 65, or would pay him $975 per month if he retired at age 55.
The judgment of a trial court based on ore tenus evidence is presumed correct and the trial court's findings based on that evidence "will not be disturbed on appeal unless they are palpably wrong, manifestly unjust, or without supporting evidence." McCoy v. McCoy, 549 So.2d 53, 57 (Ala. 1989); McCraryv. Butler, 540 So.2d 736 (Ala. 1989); Jones v. Jones,470 So.2d 1207 (Ala. 1985); Clark v. Albertville Nursing Home, Inc.,545 So.2d 9, 12-13 (Ala. 1989).
In Grimsley v. Grimsley, 545 So.2d 75 (Ala.Civ.App. 1989), the Court of Civil Appeals, considering whether a property division was equitable, stated:
 "There are no fixed standards or mathematical formulae for determining alimony or dividing property. Instead, trial courts should consider many factors in making such awards. Included are the age, sex, and health of the parties, the length of their marriage, their future prospects and station[s] in life, their standard of living and each party's potential for maintaining that standard after the divorce, the value and type of property they own, and the source of their common property. Each party's earning capacity should be examined, including his or her training, education, experience, employment history, and earning record. In appropriate cases, the conduct of the parties with reference to the cause of the divorce should also be evaluated."
545 So.2d at 76. (Citations omitted.) Although it is not the function of the reviewing court to substitute its judgment for that of the trial court, Lewis v. Lewis, 494 So.2d 105
(Ala.Civ.App. 1986), the reviewing court may revise the trial court's judgment. Sketo v. Sketo, 608 So.2d at 760; Seamon v.Seamon, 587 So.2d 333 (Ala.Civ.App. 1991).
The record and the briefs submitted by the parties show that the trial court's division of the Proctors' property (including the wife's remainder interest) resulted in an award of approximately 68% of the estate to the husband and 32% of the estate to the wife. While a property division need not be equal, it must be equitable. Sketo, supra. Those percentages do not include the "vested" retirement amounts the husband will receive at some point after reaching age 55. Additionally, those percentages exclude the debt incurred by the wife for her purchase of *Page 331 
a new house and a new office for her beautician business. The wife is eligible for health insurance benefits under the COBRA health insurance plan for only 36 months, and she will lose that coverage when she turns 48 years old. She has no retirement savings, and she received no interest in the house and the 81-acre estate, which she and the husband had held jointly, which had been held for the common benefit of both the husband and the wife, and which had been paid for in part by the wife during the course of her 28-year marriage. While the husband stands to earn approximately $41,847 a year working at the Monsanto Company, the wife stands to earn approximately $19,200 working at First American Health Care, assuming she works 40 hours a week.
In Sketo, supra, the court emphasized that the wife had been a joint owner of the real property; that the property had been used for the common benefit of the parties during their marriage; and that the wife had contributed to the payment of the mortgage on the home and on two of the parties' lots. 608 So.2d at 761. Here, the Proctors had jointly purchased the marital home and 79 acres of the estate and held joint title to all 81 acres of the estate, which they had used for their common benefit during their marriage. The length of the marriage in Sketo — 7 years — was significantly shorter than that of the Proctor marriage — 28 years. The husband in Sketo
had purchased the marital home and some adjoining lots before the marriage; the husband in this present case had owned only two acres of the estate before the marriage. Like the wife inSketo, the wife in this case held title jointly with the husband and had helped pay for the marital home and 79-acres of the estate. Like the trial court in Sketo, the trial court in this present case awarded the husband all of the real estate, including the marital home.
We are unable to distinguish the facts in this case from those in Sketo. Accordingly, we reverse the judgment of the Court of Civil Appeals and remand the case for that court to consider these facts in light of Sketo v. Sketo, 608 So.2d 759
(Ala.Civ.App. 1992), and Welch v. Welch, 636 So.2d 464
(Ala.Civ.App. 1994).
REVERSED AND REMANDED.
HOOPER, C.J., and HOUSTON, KENNEDY, COOK, and SEE, JJ., concur.