824 So.2d 797 (2001)
Mary Jane NICHOLS
v.
John C. NICHOLS.
2000900.
Court of Civil Appeals of Alabama.
December 28, 2001.
*798 J. Michael Manasco, Montgomery, for appellant.
Nathan G. Watkins, Jr., of Pruitt, Pruitt & Watkins, P.A., Livingston, for appellee.
*799 THOMPSON, Judge.
Mary Jane Nichols (the "wife") and John C. Nichols (the "husband") were married on November 26, 1967. On May 26, 1998, the wife filed a complaint for divorce and a request for a temporary restraining order. In her complaint, the wife requested that the trial court prohibit the disposal of any of the parties' assets until further order of the trial court. On that same date the court issued a temporary order prohibiting the parties from disposing of any assets other than their respective personal individual retirement accounts or monies in their personal checking accounts. On June 8, 1998, the husband filed his answer and a counterclaim.
The trial court conducted a hearing in December 2000 and on January 31, 2001, entered a judgment of divorce. Both parties filed postjudgment motions; the trial court modified the divorce judgment on February 21, 2001. The wife appealed.
The parties were married on November 26, 1967. At the time of the trial, the wife was 68 years old and the husband was 69 years old. One child, a son, John D. Nichols, was born of the marriage. Both parties had previously been married. The wife had been widowed since 1965; the three sons from her previous marriage resided with the parties during their marriage. The husband's first marriage had ended in divorce. One child, a daughter, was born of that marriage; the husband's daughter never resided with the parties. All of the parties' children had reached the age of majority at the time of the trial in this matter.
Although the wife is originally from Alabama, she and her first husband lived in Alexandria, Virginia. Soon after her first husband died, the wife sold her home in Alexandria and returned to Sumter County, where her parents resided. The wife used the proceeds from the sale of the Alexandria home, along with the insurance proceeds from her first husband's death, to build a house in Sumter County.
According to the testimony of the husband, at the time of the parties' marriage he owned an automobile and had $10,000 in savings; the wife's testimony reveals she had no knowledge of the money he had in savings. In October 1968, less than a year after the parties were married, the couple purchased their first home from the husband's previous employer for $1.
When the parties first married, the husband worked as a sales manager at the Allison Lumber division of American Can. The husband later worked as a salesperson with Bellamy Lumber Company, and after that he owned a hardware store. The husband then started John C. Nichols, Inc. That corporation was eventually merged into AT & N Lumber Services, Inc. (AT & N). AT & N prospered, with expanded operations in York, Alabama (AT & N II), and Thomasville, Georgia (AT & N III). The wife served as a corporate officer of AT & N, but was removed as an officer after she filed her complaint for a divorce. At some point during the parties' marriage, the husband also acquired a controlling interest in Ohio River Transload Service, Inc. ("Ohio River"). After the husband retired in 1997, he sold AT & N II and AT & N III. The husband financed the sales of these two businesses and, at the time of the divorce trial, the husband was receiving monthly payments from buyers.
At the time the wife filed her petition for a divorce, the husband still controlled Ohio River and AT & N. According to the record, Ohio River, at a minimum, listed on its balance sheet the following assets: a house, an automobile, and notes receivable for the sale of three forklifts. The record indicates that Ohio River's only liability *800 was a note payable to AT & N.[1] Ohio River's balance sheet also included the accumulated depreciation on the house, the automobile, and some equipment.[2] The husband still owned AT & N at the time of the trial in this matter. Although two divisions of the business had been sold, AT & N still had substantial assets at the time of the trial. These assets included equipment, real property, notes receivable, and stock.
Although the wife worked mainly inside the home during the parties' marriage, she had worked outside the home for approximately a year and a half at a school cafeteria. The wife suffered multiple back injuries in a 1992 car accident. She received a $110,000 settlement as a result of that accident. The wife's testimony indicates that she, among other things, used the settlement proceeds to repay credit-card debts, to assist the two younger children with expenses, to remodel portions of the parties' home, and to purchase a coat for herself.
During the marriage the parties acquired approximately 890 acres of real property known as the "North of Livingston" property. They also acquired 26 acres of real property in Coatopa, Alabama, (the "Coatopa" land), and 478 acres of real property in Ward (the "Ward" land). Of the Ward land, the husband had inherited 300 acres and a house from his mother. The marital home was built on additional property acquired by the parties in Livingston, Alabama.
The record indicates that the family used the Ward property for hunting and for other purposes before and after the husband's mother died. The husband testified that he maintained an account (the "farm account") separate from the family accounts. According to the husband, income derived from Ward property inherited from his mother was placed in the farm account and the expenses associated with that property were paid from that account. The record indicates that following the death of the husband's mother, timber was cut from the Ward land. According to the record, the husband received payment for the sale of the timber by check. The husband testified that the check was deposited into a bank account, but he was sure it was not deposited into the AT & N account. From the proceeds from the sale of the timber, the husband leased a family car for $12,500 and paid debts. Hay was grown on and sold from the property. The proceeds from the sale of the hay was deposited into the farm account. The record also indicates that although the upkeep for the Ward house was paid from the account, both before and after the divorce was filed, family expenses were also paid from the farm account. According to the testimony of the bookkeeper for the family businesses, those expenses include household expenses for the Livingston house such as satellite television, termite control, and insurance. The parties built a barn on the Ward property. According to the husband's testimony, he borrowed the money used to build the barn from AT & N, but subsequently paid it back. After the divorce action was filed, the husband paid support payments to the wife from the farm account.
*801 According to both the testimony of the wife and the husband, many of the parties' family expenses were paid through AT & N. The parties housekeeper was paid with checks issued from AT & N. Although the wife was an officer in AT & N and signed documents for the company, she was not employed by AT & N; however, she received a paycheck from AT & N.
At the time of the trial, the wife's income consisted of a $550 monthly Social Security payment. The husband received $13,223.22 monthly from a combination of Social Security payments and payments from the sale of the divisions of his businesses.
In its findings of fact, the trial court found that the wife's "separate estate" consisted of one-half interest in the marital residence in Livingston, Alabama; a house and 4 acres in Coatopa, Alabama; one-half interest in 30 acres in Coatopa, Alabama; one-half interest in 368 acres north of Livingston, Alabama; and one-half interest in 58 acres located near Ward, Alabama; a checking account with funds of approximately $6,000 and an IRA account valued at approximately $26,000. The trial court held that the husband had the following "separate estate": one-half interest in the marital residence in Livingston, Alabama; one-half interest in Coatopa property; one-half interest in 58 acres near Ward, Alabama; 120 acres located near Ward Alabama; 510 acres north of Livingston, Alabama; and 300 acres of land and a house in Ward, Alabama, that the husband inherited from his mother, Mary Nichols. The trial court also found that the husband has cash and investments valued as of December 1, 2000, at $763,823.89. The trial court divorced the parties on the basis of incompatibility. In fashioning a property division and alimony award, the trial court valued the marital estate[3] between $1,629,983.43 and $2,500,000. The trial court noted that the wife and the husband were both retired and drawing Social Security; however, it noted that the husband was receiving substantial income from several sources. According to the trial court, neither party had any earned income other than the income received from the investments of the husband.
In its judgment and its amended judgment, the trial court awarded the wife a property settlement and alimony in gross in the amount of $407,495.85 out of what it determined to be the marital estate. In partial satisfaction of the property settlement and alimony in gross, the trial court awarded the wife the husband's one-half interest in the Livingston house and the husband's one-half interest in the Coatopa land and timber on that land. The trial court awarded all other property to the husband.
In its judgment, as a basis for fashioning its property division, the trial court stated that "[the wife] worked in the home[,] ... [and that the husband] was the major financial contributor and most of the property acquired [during the parties' marriage] was through [the husband's] hard work and sound management." According to the trial court, "[t]he [marital] assets that have been accumulated by the parties during their marriage were accumulated and acquired without the direct contribution of the [wife], either financially or by virtue of her work, experience, advice or participation." In addition, the trial "[c]ourt [took] notice of the fact that the separate estate of the [wife], other than the house and 4 acres in Coatopa, was acquired by her during the marriage without any monetary contribution on her part *802 and was in effect a gift from the [husband] to the [wife]."
The judgment of the trial court made following an ore tenus proceeding is presumed to be correct and will not be reversed absent plain and palpable error. Parrish v. Parrish, 617 So.2d 1036 (Ala. Civ.App.1993). Matters involving alimony and property division incident to divorce are interrelated and within the sound discretion of the trial court. Parrish, 617 So.2d at 1038. Therefore, the entire judgment must be reviewed to determine if there has been an abuse of discretion, but the trial court's judgment will not be disturbed on appeal except where its discretion was abused. Id. "However, there is no presumption of correctness in the trial court's application of [the] law to the facts." Brown v. Brown, 719 So.2d 228, 230 (Ala.Civ.App.1998). The trial court, in making a determination regarding property division and alimony, should consider such things as "the earning capacities of the parties, their future prospects, their ages and health, the length of the marriage, the value and type of property involved, and the conduct of the parties pertaining to the cause of the divorce." Pickett v. Pickett, 723 So.2d 71, 73 (Ala. Civ.App.1998). The conduct of a party can affect the trial court's property division even when the parties are divorced on the grounds of incompatibility. Courtright v. Courtright, 757 So.2d 453 (Ala. Civ.App.2000). Although a property division may not necessarily be equal, it must be equitable in light of the facts of the case. Proctor v. Proctor, 712 So.2d 328 (Ala.1997).
On appeal, the wife argues that the trial court erred in determining what constituted the parties' separate estates. A party's "`separate estate' is that property over which [he or] she exercises exclusive control and from which the [spouse]... derives no benefit by reason of the marital relationship." Gartman v. Gartman, 376 So.2d 711, 713 (Ala.Civ.App. 1978). The separate estate of the parties in a divorce proceeding includes property owned prior to the marriage and property received by gift or inheritance during the marriage. § 30-2-51(a), Ala.Code 1975. Although marital property generally includes property purchased or otherwise accumulated by the parties during the marriage, it may also include the property acquired before the marriage or received by gift or inheritance during the marriage when it is used, or income from it is used, regularly for the common benefit of the parties during their marriage. See § 30-2-51(a), Ala.Code 1975.
The trial judge is granted broad discretion in determining whether property purchased before the parties' marriage or received by gift or inheritance was used "regularly for the common benefit of the parties during the marriage." See § 30-2-51, Ala.Code 1975. Even if the trial court determines that such property was regularly used for the common benefit of the parties during the marriage, the determination whether to include such property in the marital assets to be divided between the parties lies within the discretion of the trial court. Durbin v. Durbin, 818 So.2d 404 (Ala.2001). The record indicates that although the parties and the parties' children used and benefited from the Ward property inherited from the husband's mother during the parties marriage, the trial court determined that the inherited property was not regularly used for the common benefit of the parties and thus was the husband's separate estate. Even if the trial court had concluded that the property was regularly used for the benefit of the parties and their family, it is within the trial court's discretion to exclude the property from the marital estate. *803 Id. Therefore, under Durbin, supra, we cannot say that the trial court abused its discretion in excluding the inherited portion of the Ward property from the marital estate.
The wife also contends that the trial court erred in its factual findings regarding other aspects of its determination of the parties'"separate estates." When the parties first married in November 1967 they each held only a few assets. The wife owned a house and a few acres in Coatopa, Alabama, and the husband owned an automobile and had $10,000 in savings. Excluding from this discussion the property inherited from the husband's mother discussed above, the evidence clearly demonstrates that the remainder of the assets at issue in this case were acquired by the parties during the 32 years of their marriage. The wife clearly obtained the benefits of those assets by virtue of the marital relationship. Additionally, the house located at Livingston, Alabama, was used by both parties during the marriage and was the home in which they raised the four children. "The marital residence, in which the parties resided during the entire length of their marriage, can hardly be considered property that was not `used regularly for the common benefit of the parties during their marriage.'" Mayhann v. Mayhann, 820 So.2d 836, 838 (Ala. Civ.App.2001) (quoting § 30-2-51(a), Ala. Code 1975). Therefore, we must conclude that the trial court erred in determining what constituted each party's "separate estate" for purposes of fashioning its division of the parties' marital assets.
In addition, we note that, as the trial court stated in its findings, both parties are retired and receiving Social Security benefits, but the husband also has substantial income from several sources. The trial court also stated that neither party has any earned income other than the income received from the investments of the husband. The record indicates that the wife's monthly income is $550 and the husband's is over $13,000. In its divorce judgment, the trial court awarded the wife a property settlement and alimony in gross totaling $407,495.85. The marital estate is valued somewhere between $1,629,983.43 and $2,500,000. In partial satisfaction of the property division, the trial court awarded the wife the husband's portion of the marital residence and the husband's half of the land surrounding the Coatopa house. The wife was awarded no liquid assets.
The trial court's judgment awarded the wife between approximately 19% and 29%[4] of the marital assets. The trial court's judgment made no finding of fault regarding either party's conduct in the breakdown of the marriage; it appears that the conduct of both parties contributed to the breakdown of the marriage. Considering the factors set forth in Pickett, supra, the respective monthly incomes of the parties, their potential earning capacities, the value of the marital estate, and the type of property involved, we must hold that the trial court's property division is not equitable. Accordingly, the judgment is due to be reversed and the cause remanded with instructions for the court to enter an equitable property division and alimony award.
The wife is awarded a $15,000 attorney fee.
REVERSED AND REMANDED.
YATES, P.J., and PITTMAN, J., concur.
*804 MURDOCK, J., concurs in the result.
CRAWLEY, J., dissents.
CRAWLEY, Judge, dissenting.
I must respectfully dissent. Although I agree that the trial court used some inappropriate terminology in fashioning its property division, the division itself appears to be equitable. The wife receives a total of $781,542 in assets under the trial court's judgment. A property division need not be equal, only equitable; the task of determining what is equitable falls to the trial court. Ross v. Ross, 447 So.2d 812 (Ala.Civ.App.1984). I would affirm the judgment.
NOTES
[1] At the time the divorce complaint was filed, Ohio River had a note payable to the husband and the husband had a note payable to AT & N. This debt was reorganized so that the husband's name was removed from that note at the time of the trial.
[2] Although the parties' accountant testified that the accumulated depreciation account included depreciation on the equipment, the record is unclear regarding what equipment Ohio River still owned.
[3] Although it is unclear from the record, it appears that the trial court is referring to the total value of the "separate estate" of the wife plus the "estate" of the husband.
[4] This percentage was arrived at by taking the total property settlement and alimony in gross awarded to the wife plus the value of the Coatopa house divided by the value of the estate as determined by the trial court in its findings of fact.