891 So.2d 883 (2004)
Jane Carson MARSHALL
v.
Samuel Ray MARSHALL.
2020710.
Court of Civil Appeals of Alabama.
April 23, 2004.
*884 John P. McClusky, Tuscaloosa, for appellant.
Michael J. Cartee, Tuscaloosa, for appellee.
THOMPSON, Judge.[1]
Jane Carson Marshall ("the wife") sued Samuel Ray Marshall ("the husband") for a divorce. The trial court conducted a hearing on December 20, 2002, at which it received ore tenus evidence. On February 7, 2003, the trial court entered a judgment in which it divorced the parties; awarded the wife custody of the parties' child; ordered the husband to pay child support; and divided the parties' marital property. The trial court amended its judgment on March 28, 2003, and the wife timely appealed.
The record indicates that the parties first married in 1973. They were divorced in 1984, but they began to live together again in 1985. The parties married a second time in 1989; they separated in 2001, and the wife filed for a divorce in 2001. At the time of trial in this matter, the husband was 60 years old and the wife was 52 years old.
The husband graduated from high school and attended less than two years of college. He retired in 1996 after 25 years working as a firefighter with the Tuscaloosa Fire Department, and he receives a pension of $2,419.82 per month. In addition to his work as a firefighter, the husband worked for his brother as a maintenance supervisor. After his retirement in 1996, the husband continued to work as a maintenance supervisor, and he later found employment as a credit-union collection representative and as a construction-project manager. The husband also obtained a real-estate license and a commercial driver's license. The husband is currently employed with Advanced Building Specialties and performs general building maintenance; he earns $900 per week.
*885 The husband has a degenerative joint disease of the knee. In 2001, the husband had surgery on his knee, as well as throat surgery; as a result of those surgeries, he was out of work for several months in 2001. The husband recovered from his throat surgery, but he continues to have problems with his knee. The husband testified that he wears a knee brace and that he is unable to work without pain. The husband testified that he plans to continue working until he reaches the age of 62 (in approximately 2 years) and is eligible for Social Security benefits. The husband estimates that he will receive $1,100 per month in Social Security benefits after he quits working.
One child was born of the parties' marriage; that child is an adult dependent daughter who was 27 years old at the time of trial. The daughter was born with significant health problems and suffers from a "severe combined immune deficiency," intestinal polyps, bronchiectasis, and problems resulting from prolonged undiagnosed bleeding. The daughter's condition requires frequent medical treatment, including occasional emergency treatment at the Mayo Clinic in Rochester, Minnesota. Her condition is terminal. The parties agreed that the wife would care for the daughter.
The wife completed high school and two years of college. The wife is the primary caretaker for the parties' daughter, and she did not work outside of the home for most of the marriage. In 1992, the wife began working part-time as a salesperson for Campo Electronics. The wife obtained her real-estate license in 1995. The wife voluntarily terminated her employment with Campo in 1997 and pursued a career in real estate in an effort to find full-time employment that allowed her the necessary flexibility in her schedule to continue to care for the parties' daughter. The wife testified that she had obtained an "Accredited Land Consultant" designation, thus permitting her to participate in land sales.
In approximately 1997, the husband and the wife began a real-estate business. The parties spent considerable sums of money to launch the real-estate business. The parties presented conflicting evidence regarding the exact amount they spent on the real-estate business. However, it is undisputed that between 1997 and 2001 the parties incurred sizeable debts in the form of credit-card charges and a second mortgage on the marital home to finance overhead expenses for the business and to cover normal living expenses.
The wife is currently employed, part-time, earning $7 per hour. The wife testified that her employer allows her to bring the parties' daughter to work. According to the wife, the daughter's health condition limits the wife's ability to seek more advantageous employment opportunities. The wife testified that she sees no alternative to being the primary caregiver for the daughter. The wife noted that she is responsible for administering the daughter's breathing therapy, back therapy, and intravenous medications.
After the parties remarried in 1989, the wife had significant medical problems that necessitated multiple surgeries. The wife testified that she has had a hysterectomy, a bilateral mastectomy with eight follow-up surgeries, and surgery to replace her anterior cruciate ligament.
The parties own four pieces of real property: the marital home located on one acre of land in Tuscaloosa County; approximately six acres of pastureland with barns and storage structures, adjacent to the marital home; an undeveloped 1.3-acre lot, also adjacent to the marital home; and a 40-acre parcel of undeveloped land in Gunnison, Colorado. The parties offered *886 different estimates of the value of the properties and the indebtedness thereon.
The husband estimated the value of the marital home and the land on which that home is located to be between $125,000 and $135,000; he stated that that property is subject to a mortgage indebtedness in the amount of $95,000 for a first mortgage and additional indebtedness, in the form of a second mortgage, in the amount of $17,808. The monthly payments on those mortgages are $937 and $250, respectively. The wife testified that a recent tax appraisal of the marital home and the land on which it is located listed its value at $144,000.
The husband estimated the value of the Colorado property at $130,000. The wife testified, based on a list of comparable property for sale in the Gunnison, Colorado, area she submitted into evidence, that the undeveloped Colorado property was worth approximately $55,000. The wife stated that the Colorado property was subject to a mortgage indebtedness of $70,000, more than she claimed the property was worth. The wife submitted recent appraisals of the pastureland and the 1.3-acre lot indicating that the pastureland was valued at $40,000 and the 1.3-acre lot was valued at $10,000.
The parties own three vehicles, two 1999 Ford pick-up trucks and a 1994 Ford Explorer sport-utility vehicle. The parties also own a boat. The record contains no valuation for those assets.
The husband attributed the parties' separation to an alleged affair that the wife had with a real-estate client. The husband testified that, in May 2001, he found "love letters" written by the wife to one of her clients. The husband confronted the wife with the letters and threatened her with a pistol. The wife denied having an affair and obtained a restraining order against the husband. The husband introduced into evidence at trial three letters allegedly written by the wife. The wife denied writing all or parts of each of the three letters and denied having an affair with her real-estate client.
In its February 7, 2003, judgment, the trial court made findings of fact. In those findings, the trial court resolved the conflicting evidence with regard to the value of the parties' real property by finding that there was no equity in the marital home; that the adjacent lot was valued at $10,000; that the pastureland was valued at $40,000; and that the Colorado property had a fair market value of $100,000, less mortgage indebtedness in the amount of $70,000 attached to the Colorado property.
The trial court also found that the husband's approximate monthly gross income from his employment was $3,900 and that he had a retirement income of $2,420 per month. The trial court determined that the wife earned $1,213 in monthly gross income from her employment. The trial court also found that "a preponderance of the evidence indicates that the wife had an extramarital relationship." However, the trial court divorced the parties based on an incompatibility of temperament. The trial court awarded custody of the parties' daughter to the wife. The husband was ordered to pay $600 per month for the daughter's support and maintenance, as well as to maintain health insurance for the daughter and to pay for travel expenses associated with the daughter's medical treatment.
The trial court awarded the husband the marital home, the 1.3-acre adjacent lot, and the pastureland, subject to any indebtedness on those properties. The trial court awarded the wife the Colorado property, subject to the indebtedness thereon. The wife was awarded the 1994 Ford Explorer sport-utility vehicle; the husband *887 was ordered to pay the indebtedness on that vehicle. The wife and the husband were each awarded one of 1999 Ford pick-up trucks, subject to the indebtedness on the particular vehicle awarded to them. The trial court awarded the husband ownership of the boat, subject to the wife's exclusive use and possession of the boat for the remainder of the daughter's life. The trial court awarded the wife $17,500 as alimony in gross, $1,500 for relocation expenses, and $1,500 as an attorney fee. The trial court reserved the issue of periodic alimony.
On appeal, the wife contends that the trial court erred by making a finding in its judgment that the wife participated in an "extramarital relationship" and that such a finding was not supported by the evidence. The wife argues that the "love letters" admitted into evidence at trial, without more, are insufficient to support a finding that she committed adultery.
The wife relies on Maddox v. Maddox, 553 So.2d 611 (Ala.Civ.App.1989), in support of her argument on appeal. In Maddox, supra, the trial court divorced the parties on the grounds of incompatibility of temperament, an irretrievable breakdown of the marriage, and adultery committed by the husband. In its judgment, the trial court in Maddox specifically stated that the grounds for the divorce were considered in its formulation of the property settlement. In Maddox, the only evidence concerning adultery that the wife submitted into evidence at trial was "love letters" that were found in the husband's briefcase. This court reversed the judgment of the trial court, holding that the letters failed to "rise to the level of supplying evidence supporting a finding of adultery." Maddox, 553 So.2d at 612.
The facts presented in Maddox are distinguishable from those presented in the instant case. In the case at bar, the trial court did not divorce the parties on the basis of adultery, nor did it specifically state in its judgment that it based its property division on a finding that the wife participated in an "extramarital relationship." Therefore, Maddox is not controlling in the instant case to establish that the evidence presented to the trial court was not sufficient to support a finding that the wife participated in an "extramarital relationship."
The wife next argues that the trial court erroneously calculated the husband's support obligation for the parties' adult dependent daughter by crediting the husband with the entire amount of the health-insurance premium that is deducted from his paycheck each month. The wife maintains that, under the Child Support Guidelines, the husband is not entitled to a setoff for the entire amount of the health-insurance premium because, she says, the husband's family/dependent health-insurance coverage costs him no more than single coverage for himself alone would cost. Rule 32(B)(7), Ala. R. Jud. Admin., states, in pertinent part:
"(a) The actual cost of a premium to provide health insurance benefits for the children shall be added to the `basic child support obligation' and shall be divided between the parents in proportion to their adjusted gross income in the percentages indicated on the Child Support Guidelines form (Form CS-42).
"(b) The amount to be added to the `basic child support obligation' shall be the actual amount of the total insurance premium for family/dependent coverage, regardless of whether all children covered are in the same family.
"(c) After the `total child support obligation' is calculated and divided between the parents in proportion to their `monthly adjusted gross income,' the amount added pursuant to subsection (b) *888 shall be deducted from the obligor's share of the total child support obligation, provided the obligor actually pays said premium. If the obligee is actually paying the premium, no further adjustment is necessary."
(Emphasis added.)
In Brown v. Brown, 719 So.2d 228 (Ala.Civ.App.1998), this court held that, pursuant to Rule 32(B)(7)(b), the total cost of the health-insurance premium for family/dependent coverage was properly included in the calculation of the child-support obligation. In the instant case, the trial court was provided with a CS-42 child-support-guidelines form that properly included the full amount that the husband paid per month in health-insurance costs in its calculation of his child-support obligation. Based on this court's holding in Brown, supra, we cannot say that the trial court erred in its calculation of the husband's child-support obligation.
The wife also contends on appeal that the trial court abused its discretion in fashioning its property division and its alimony award. In making this argument, the wife asserts that the trial court inequitably divided the marital assets by failing to award her periodic alimony or any portion of the husband's retirement benefits. The wife points out that her employment opportunities are limited by the parties' mutual decision that she engage in the full-time care of the parties' dependent daughter and that she will continue to be responsible for the daughter's care.
A trial court's determination regarding a property division and an award of alimony is entitled to a presumption of correctness on appeal and will not be reversed absent a showing of plain and palpable error. Roberts v. Roberts, 802 So.2d 230 (Ala.Civ.App.2001); Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App.1993). The issues of property division and alimony are interrelated, and they must be considered together on appeal. Parrish v. Parrish, supra. In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages, health, and station in life; the length of the marriage; and the source, value, and type of marital property. Robinson v. Robinson, 795 So.2d 729 (Ala.Civ.App.2001). Also, in fashioning its property division and it alimony award, a trial court may consider a party's conduct with regard to the breakdown of the marriage, even where the parties are divorced on the basis of incompatibility. Nichols v. Nichols, 824 So.2d 797 (Ala.Civ.App.2001). Although a property division may not necessarily be equal, it must be equitable in light of the particular facts of the case. Id.
The parties' second marriage lasted 14 years. Both the husband and the wife have a history of health problems; however, there is no indication in the record that either the husband or the wife is incapable of working. The husband has a gross monthly income of approximately $6,300, which includes $2,419.82 in retirement income. The wife earns $1,213 in gross income per month and has no retirement benefits.
After the birth of the parties' daughter and the discovery of her illness, the wife became the primary caregiver for the daughter. Although the daughter's condition is terminal, there is no evidence in the record before us indicating how long the daughter can be expected to live. Both parties agree that the wife is the best person to care for the daughter. It is undisputed that the job of caring for the parties' daughter has limited the wife's employment opportunities. The wife is currently fortunate enough to have an employer *889 that accommodates her care for the daughter. Given the length of the parties' marriage, the disparity between the parties' income, and the mother's care for the daughter, we must conclude that the property division and, specifically, the failure to award the wife periodic alimony amounts to an abuse of the trial court's discretion.
Accordingly, the judgment of the trial court is reversed insofar as it pertains to the division of property and the award of periodic alimony, and the cause is remanded for the trial court to fashion a more equitable property division and alimony award.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and MURDOCK, J., concur.
CRAWLEY, J., concurs in part and dissents in part, with writing, which PITTMAN, J., joins.
CRAWLEY, Judge, concurring in part and dissenting in part.
I concur in the main opinion insofar as it affirms the trial court's finding that the wife engaged in an "extramarital relationship" and the trial court's calculation of the husband's child-support obligation. I dissent, however, from that part of the main opinion that reverses the trial court's property division and its reservation of whether to award periodic alimony to the wife.
"It is well settled that trial judges enjoy broad discretion in fashioning divorce judgments." Ex parte Bland, 796 So.2d 340, 343 (Ala.2000).
"`In reviewing the trial court's judgment in a divorce case presented ore tenus, we will presume the judgment to be correct until it is shown to be plainly and palpably wrong or unjust. Brannon v. Brannon, 477 So.2d 445 (Ala.Civ.App.1985).'"
Id. (quoting Ex parte Jackson, 567 So.2d 867, 868 (Ala.1990)). Issues concerning alimony and the division of marital property rest within the trial court's discretion, and rulings on those matters will not be disturbed in the absence of a plain and palpable abuse of discretion. Welch v. Welch, 636 So.2d 464 (Ala.Civ.App.1994). Matters of alimony and property division are interrelated, and a reviewing court must consider the entire judgment in determining whether the trial court abused its discretion on either issue. Willing v. Willing, 655 So.2d 1064 (Ala.Civ.App.1995).
"Each case is decided on its own peculiar facts and circumstances. Criteria which should be considered by the trial court when awarding alimony and dividing property include the length of the parties' marriage, their ages, health, station in life, and future prospects; the source, value, and type of property owned; the standard of living to which the parties have become accustomed during the marriage and the potential for maintaining that standard; and, in appropriate situations, the conduct of the parties with reference to the cause of divorce."
Currie v. Currie, 550 So.2d 423, 425 (Ala.Civ.App.1989).
Although both parties have had significant medical problems in the past, there was no testimony that the wife currently suffers from any disabling condition that would prevent her from working. The trial court specifically found that the wife "is a licensed real estate agent and is capable of earning income in the real estate field." That finding is fully supported by the evidence. The only impediment to the wife's ability to earn is her responsibility for the care of the parties' daughter. The trial court ordered the husband to pay *890 the wife $600 per month for the support and maintenance of the daughter, to cover the daughter on his health-insurance policy, and to be responsible for all travel expenses associated with the daughter's periodic emergency trips to the Mayo Clinic or other health providers. In light of the undisputed evidence that the daughter's condition is terminal and that she has far exceeded the life expectancy of one with her medical problems, the trial court was authorized to conclude that the husband's responsibility for the daughter would be relatively short-lived and that, during the daughter's lifetime, the wife was capable of supporting herself and did not need periodic alimony. That conclusion is borne out by the evidence adduced at trial. The record indicates that immediately before the parties' separation, the wife was scheduled to receive a $130,000 commission upon the closing of a sale of a parcel of real property. That sale fell through, however, because, among other reasons, the husband confronted the wife and the buyer with his suspicion that the two of them were having an affair. Although the trial court made no finding with respect to the husband's ability to work, the evidence tended to show that the husband suffers from knee pain and that his working years in construction are limited. The husband testified that he planned to retire soon and live on his firefighters' pension. The trial court could have considered that the husband is eight years older than the wife, that he had worked two jobs throughout the marriage, that he had incurred a large debt to launch the wife's real-estate career, and that the wife was not entitled either to a share of his pension or to periodic alimony.
I conclude that not only was the trial court's division of the marital property equitable, but also that it was substantially equal. I do not believe that the court exceeded the limits of its discretion either by failing to divide the husband's retirement benefits or by reserving the issue of periodic alimony. See Ex parte Foley, 864 So.2d 1094 (Ala.2003); Ex parte Bland, 796 So.2d 340 (Ala.2000). The trial court specifically found that the wife had engaged in marital misconduct. It is immaterial that the trial court did not, as the main opinion points out, "specifically state in its judgment that it based its property division on a finding that the wife participated in an `extramarital relationship.'" The trial court may, of course, consider marital misconduct in determining the division of the marital estate and in deciding whether to award periodic alimony. See Currie v. Currie, supra, I believe that, in light of the trial court's specific finding of misconduct by the wife, this court should defer to the trial court's judgment. In addition, however, I believe the evidence provides another basis for presuming the judgment is correct. Although the wife's employment opportunities have been limited by the parties' mutual decision to have the wife care for the parties' adult dependent daughter, the trial court could have found that, to compensate for that fact, the husband worked at two or more jobs throughout the marriage and that he expended large sums of money and incurred a sizeable debt to launch the wife's real-estate business  a business the wife chose because it allowed her to take the daughter with her to work.
I conclude that the trial court was authorized to determine that the husband had already sacrificed during the marriage in order to provide the wife with a source of income. Because the trial court reserved the issue of periodic alimony, the wife can always petition for periodic alimony based on a showing of changed circumstances. As to this issue, I believe this court has impermissibly substituted its *891 judgment for that of the trial court. See Ex parte Moore, 873 So.2d 1161 (Ala.2003).
PITTMAN, J., concurs.
NOTES
[1] This case was originally assigned to another judge on this court on October 6, 2003. It was reassigned to Judge Thompson on March 2, 2004.