BRYAN, Judge.
Michael Berry McMillan (“the husband”) appeals from a judgment divorcing him from Dawn Dean McMillan (“the wife”). We affirm.
*369 The husband presents two issues on appeal: (1) whether the trial court erred in awarding the wife a property settlement in the amount of $20,000, which, the husband says, violated the unambiguous terms of a postnuptial agreement the parties had executed, and (2) whether the trial court erred in requiring the husband “to provide the [wife] with 12 months of COBRA” health-insurance benefits.
The husband and the wife are both 51 years old. The husband has one child by a previous marriage, and the wife has two children by a previous marriage. No children were born of the marriage between the husband and the wife.
The wife and her two children moved into the husband’s home, which is located on 17 acres, a few months before the husband and the wife married on November 1, 2004. Before the wedding, the husband had told the wife that, upon his death, he wanted the home and the 17 acres to go to his brother because his brother had assisted him in developing the 17 acres. On November 8, approximately a week after the wedding, the husband presented the wife with a postnuptial agreement. The wife signed the postnuptial agreement that same day without seeking the advice of an attorney. The husband signed the post-nuptial agreement on November 11, 2004.
In pertinent part, the postnuptial agreement states:
“3. Divorce. If any marriage of MICHAEL B. McMILLAN and DAWN D. McMILLAN is annulled or dissolved by divorce in any jurisdiction, neither party will claim any right, title, or interest in or to any of the sole property or estate of the other party, whether real, personal, or mixed, and each party does hereby waive and forfeit the right to claim any of the sole property of the other party in such event. Likewise in the event any marriage of the parties is annulled or dissolved by divorce in any jurisdiction, the parties agree that neither shall claim any right to alimony from the other or pension or other retirement plan rights of the other, and do expressly forfeit and waive their respective rights to any alimony or any such pension or other retirement plan rights. As to property owned jointly by the parties, whether real, personal, or mixed, in the event any marriage of the parties is annulled or dissolved by divorce in any jurisdiction, the parties agree that either such properties will be sold and they will share equally in the net proceeds of any such sale, or, at the option of either party, one party may purchase the other party’s share in all or any such jointly owned real properties at fair market value. All liabilities in connection with any of said properties including mortgage indebtedness, shall be considered joint, whether entered into by both of the parties or by one of the parties alone.
[[Image here]]
“7. Disclosure of Facts. DAWN D. McMILLAN acknowledge^] that the present approximate net worth of MICHAEL B. McMILLAN has been fully and completely disclosed to her, that she has given consideration to this information, that she has had the advice of independent counsel, or has declined the advice of independent counsel and that she is entering into this Postnuptial Agreement freely and with a full understanding of its provisions. MICHAEL B. McMILLAN acknowledges that the present approximate net worth of DAWN D. McMILLAN has been fully disclosed to him, that he understands that he has given consideration to this information, that he has had the advice of independent counsel, and that he is entering into this Postnuptial Agree *370 ment freely and with a full understanding of its provisions.
“8. Consideration. The consideration for this Postnuptial Agreement is the continuation of the marriage by the parties, and the mutual covenants, promises, and benefits herein contained.”
(Capitalization in original; emphasis added.)
After the marriage, the wife improved the 17 acres by, among other things, building rock gardens, planting flowers, and spreading sand along the bank of a pond located on the 17 acres. The husband paid for many of the materials used in those improvements.
Following an argument, the parties separated on January 29, 2009. On February 13, 2009, the wife sued the husband for a divorce on the ground of incompatibility and sought an equitable division of the marital property. On February 26, 2009, the husband answered the wife’s complaint and asserted a counterclaim seeking a divorce on the ground of incompatibility. In his answer, he asserted that the postnup-tial agreement barred the wife from claiming an interest in the home and the 17 acres where the husband and the wife had resided during the marriage. The wife then answered the husband’s counterclaim.
Following a hearing, the trial court, on April 23, 2009, entered an order awarding the wife pendente lite alimony in the amount of $400 per month. The husband moved the trial court to reconsider that award on the ground that it violated the postnuptial agreement; the trial court denied that motion.
Following an ore tenus proceeding, the trial court entered a judgment divorcing the parties on June 29, 2009. In pertinent part, the judgment stated:
“This matter having come before this Honorable Court on the 26th day of May, 2009, it is hereby ORDERED, ADJUDGED AND DECREED, as follows:
[[Image here]]
“2. That the Court holds that the postnuptial agreement is valid to the extent that it does not conflict with this final decree of divorce issued by this Court.
[[Image here]]
“4. The [husband] is ordered to pay to the [wife] $20,000.00 as a property settlement to be paid within 60 days from the date of this order. The [husband] is required to continue paying the $400.00 per month alimony pending payment by the [husband] to the [wife] in the amount of $20,000.00. The [husband] is to be given credit for the $400.00 per month beginning June 1, 2009 towards the $20,000.00 property interest.
“5. The [husband] is ordered to provide the [wife] with 12 months of COBRA beginning the date of this order.”
(Capitalization in original; emphasis added.)
The husband timely moved the trial court to alter or amend the judgment pursuant to Rule 59(e), Ala. R. Civ. P. The husband asserted that the trial court should alter or amend the judgment to state the ground upon which the divorce was granted. He also asserted that the trial court should alter or amend the judgment to eliminate the award to the wife of a property settlement in the amount of $20,000 because, he said, that award violated the postnuptial agreement, which, the husband said, the trial court had determined was valid. In addition, he asserted that the trial court should alter or amend the judgment to eliminate the provision requiring him “to provide the [wife] with 12 months of COBRA” health-insurance *371 benefits because, he said, the wife had not requested such relief in her complaint or in her direct testimony at trial and the parties’ circumstances did not warrant such relief. The trial court amended the judgment to specify incompatibility as the ground upon which the divorce was granted and denied the husband’s postjudgment motion in all other respects. The husband then timely appealed to this court.
Because the trial court received evidence ore tenus, our review is governed by the following principles:
“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.”” Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Waltman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).
The husband first argues that the trial court erred in awarding the wife a property settlement in the amount of $20,000 because, he says, that award violates the postnuptial agreement, which, he says, the trial court determined was valid. The wife, on the other hand, argues that the trial court did not err in awarding her the property settlement in the amount of $20,000 because, she says, the trial court could have found from the evidence that the home and the 17 acres were used for the common benefit of the husband and the wife before they signed the postnuptial agreement and that, therefore, the home and the 17 acres constituted marital property rather than the husband’s separate property on the date they signed the post-nuptial agreement. Thus, according to the wife, the trial court could have found that she had not waived her claim to an interest in the home and the 17 acres by signing the postnuptial agreement. Consequently, according to the wife, the trial court had the discretion to award her $20,000 to compensate her for her interest in the home and the 17 acres.
In Nelson v. Estate of Nelson, [Ms. 2080989, Jan. 29, 2010] — So.3d - (Ala.Civ.App.2010), a case involving a post-nuptial agreement, this court stated:
“ ‘[A]ntenuptial agreements are valid in Alabama. However, courts scrutinize such agreements to determine whether they are just and reasonable.’ Barnhill v. Barnhill, 386 So.2d 749, 751 (Ala.Civ.App.1980) (citation omitted). Prenuptial and postnuptial agreements are scrutinized by the same standard. Tibbs v. Anderson, 580 So.2d 1337, 1339 (Ala.1991). In Barnhill, supra, this court required the party seeking to enforce an antenuptial agreement — in that case, a husband seeking to enforce a prenuptial agreement — to show that the entire transaction was fair, just, and equitable from the wife’s point of view or that the agreement had been freely and voluntarily entered into by the wife, with competent independent advice and with full knowledge of her interest in the estate and its approximate value. Id. at 751. ‘Meeting the requirements of ei *372 ther of the above tests is sufficient to give effect to an antenuptial agreement.’ Id.”
— So.3d at -. Moreover, if a written antenuptial or postnuptial agreement is valid and unambiguous, it must be enforced according to its terms. See Hubbard v. Bentley, 17 So.3d 652, 654 (Ala.Civ.App.2008) (“[W]e held in both McGiffert v. McGiffert, 627 So.2d 972, 977 (Ala.Civ.App.1993), and in Brown v. Brown, [26] So.3d [1210, 1219] (Ala.Civ.App.2007), that trial courts may not dispose of property addressed in an antenuptial agreement in a manner that is inconsistent with that agreement.”).
In Nelson v. Estate of Nelson, an exhibit attached to the postnuptial agreement specified what property the parties agreed was the separate property of the husband and the separate property of the wife for purposes of the postnuptial agreement. — So.3d at -. In the case now before us, on the other hand, neither the postnuptial agreement itself nor an attached exhibit specified what property the parties agreed was the separate property of the husband and the separate property of the wife for purposes of the postnuptial agreement. The undisputed evidence established that the home and the 17 acres were used for the common benefit of the husband and the wife between November 1, 2004, the date they married, and November 8, 2004, the date the wife signed the postnuptial agreement.
In the absence of a contractual agreement regarding what property constituted each party’s separate property on the date they signed the postnuptial agreement, we must look to the law governing what constitutes a spouse’s separate property to determine whether the home and the 17 acres were the husband’s separate property on the date the wife signed the postnup-tial agreement. In Nichols v. Nichols, 824 So.2d 797 (Ala.Civ.App.2001), this court stated:
“A party’s 1 “separate estate” is that property over which [he or] she exercises exclusive control and from which the [spouse] ... derives no benefit by reason of the marital relationship.’ Gartman v. Gartman, 376 So.2d 711, 713 (Ala.Civ.App.1978). The separate estate of the parties in a divorce proceeding includes property owned prior to the marriage and property received by gift or inheritance during the marriage. § 30-2-51(a), Ala.Code 1975. Although marital property generally includes property purchased or otherwise accumulated by the parties during the marriage, it may also include the property acquired before the marriage or received by gift or inheritance during the marriage when it is used, or income from it is used, regularly for the common benefit of the parties during their mamage. See § 30-2-51(a), Ala.Code 1975.
“The trial judge is granted broad discretion in determining whether property purchased before the parties’ marriage or received by gift or inheritance was used ‘regularly for the common benefit of the parties during the marriage.’ See § 30-2-51, Ala.Code 1975. Even if the trial court determines that such property was regularly used for the common benefit of the parties during the marriage, the determination whether to include such property in the marital assets to be divided between the parties lies within the discretion of the trial court. Durbin v. Durbin, 818 So.2d 404 (Ala.2001).”
824 So.2d at 802 (emphasis added).
Because the parties did not specify in the postnuptial agreement that the home and the 17 acres were the separate property of the husband for purposes of the postnuptial agreement, the trial court was free to determine that the home and *373 the 17 acres constituted marital property by virtue of their use for the common benefit of the husband and the wife before the wife signed the postnuptial agreement. Although the postnuptial agreement requires that the parties sell their marital property and divide the proceeds equally unless one of the parties buys the other’s interest in the marital property, the husband does not argue that the trial court erred by awarding the wife $20,000 to compensate her for her interest in the home and the 17 acres. “When an appellant fails to argue an issue in its brief, that issue is waived.” Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982). Consequently, we affirm the trial court’s judgment insofar as it awarded the wife a property settlement in the amount of $20,000.
The husband next argues that the trial court erred in ordering him “to provide the [wife] with 12 months of COBRA” health-insurance benefits because, he says, she did not request such relief in her complaint or in her direct testimony at trial and the evidence did not establish that COBRA health-insurance benefits are available through his employer. Although the wife did not request that the trial court order the husband to pay for COBRA health-insurance benefits until she testified during the rebuttal phase of the trial, the husband did not object to her testimony concerning that request. Rule 15(b), Ala. R. Civ. P., provides, in pertinent part, that “[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.” The husband, by failing to object to the wife’s testimony concerning her request for COBRA health-insurance benefits implicitly consented to the trial court’s considering that request at trial. See Hawk v. Bavarian Motor Works, 342 So.2d 355, 358 (Ala.1977) (“Implied consent to the trial of an issue may be found when a party fails to object to evidence offered concerning it.... ”) Therefore, there is no merit to the husband’s argument that the trial court erred in ordering him to provide COBRA health-insurance benefits for the wife in the absence of a claim for such benefits in her complaint and in her direct testimony.
 The husband’s argument that the trial court erred by ordering him to provide COBRA health-insurance benefits in the absence of any evidence establishing that such benefits were available through his employer would warrant a reversal of that provision of the divorce judgment if he had presented that argument to the trial court. In Lackey v. Lackey, 18 So.3d 393 (Ala.Civ.App.2009), this court held that a trial court had erred in ordering a husband to provide his wife with COBRA health-insurance benefits in the absence of any evidence establishing that such benefits were available through his employer. However, in the case now before us, the husband did not argue to the trial court that it could not order him to provide COBRA health-insurance benefits in the absence of evidence establishing that such benefits were available through his employer. We cannot reverse the trial court’s judgment on the basis of an argument that is presented for the first time on appeal. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“This Court cannot consider arguments raised for the first time on appeal.... ”).
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.