THOMPSON, Presiding Judge.
Edward L. Stone (“the husband”) appeals from the trial court’s judgment divorcing the parties. In the judgment, the trial court divided the parties’ marital property, allocated the parties’ debt, and awarded Marcia W. Stone (“the wife”) periodic alimony in the amount of $4,500 each month.
Evidence at the trial, held in January 2008, tended to show the following. The parties were married for 36 years. Their children had reached the age of majority by the time the divorce proceedings began. The husband had been a career officer in the United States Army. At the time of trial, he had retired from the Army and was working in the private sector.
The evidence showed that the husband engaged in profligate behavior throughout the parties’ relationship, both before and *1234 after the marriage. When the wife was pregnant with the parties’ youngest child, the husband had sexual relations with the wife’s mother. He had also had sexual relations with the wife’s mother before the marriage. During the course of the marriage, the husband had affairs with seven other women as well. The wife became aware of the husband’s behavior after he was diagnosed with herpes. At that time, the husband told the wife that he had contracted the disease as the result of a one-time sexual encounter that occurred when he was intoxicated. At that time, the wife said, she still loved the husband, and the two chose to stay together. There is no evidence indicating that the wife ever contracted herpes. The husband’s most recent affair, which began in February 2005, was still ongoing at the time of the trial. At the trial, the husband admitted that he was in love with the woman with whom he was having the affair.
The wife’s behavior was not exemplary, either. While the husband was still in the Army, the wife had two affairs, including one with her husband’s commanding officer. The husband testified that the wife also had a drinking problem that had reached the point that it sometimes interfered with her ability to walk, drive, and speak clearly. The parties testified that, in the latter years of their marriage, they were seldom intimate with each other.
The husband asserted that he was disabled, but he is able to work. A pay stub dated November 16, 2007, indicated that the husband had earned $199,922.06 thus far that year. The husband testified that his monthly net income was $8,051.22. The wife contended that the husband’s monthly net income was $12,240.90, which included not only his income from his employer, but also $352.30 in disability benefits from the Veterans’ Administration (“VA”) and an $8,000 annual bonus, which the trial court treated as though it had been received in 12 payments.
The wife had a degree in nursing, but she had not worked in that field since shortly after the parties married. The parties moved frequently because of the husband’s Army career. The wife sold real estate, and in 2003 she began selling jewelry, but she was unable to make much money in either venture. The husband acknowledged that the wife had never earned more than $20,000 annually during the marriage, but he stated that she had chosen not to work. The wife testified that she had injured her back and was unable to work after she had surgery on her back for a second time in December 2006. She also suffers from chronic sinusitis, bronchitis, and asthma, and she has rheumatoid arthritis in her hands and feet.
At the time of the trial in January 2008, the parties owned the marital residence in Madison, which the wife valued at $275,000; the husband valued the home at between $325,000 and $340,000. At the time of the trial, the outstanding debt on the marital residence was $217,728. The parties also owned a house in Virginia Beach, Virginia, which they agreed had a fair market value of $445,000. The balance owed on the mortgage for the Virginia Beach house was $149,900. They also had a number of other financial assets, including individual retirement accounts, the husband’s 401 (k) plan with his current employer, a profit-sharing plan with the husband’s current employer, and other investment accounts.
The evidence indicated that, in addition to the mortgage payments, car payments, and monthly expenses, the husband had credit-card debt of approximately $22,000. The wife had credit-card debt exceeding $105,000. She testified that the debt had accrued because the approximately $1,200 the husband gave her each month was *1235 inadequate for the family’s food, pet supplies, clothing, gasoline, and personal expenses. Each party accused the other of attempting to inflate his or her monthly budgetary needs. For example, the wife budgeted $100 each month for pet food and supplies — the husband asserted that she does not even have a pet. On the other hand, the husband budgeted for a mortgage of $2,000 per month, plus homeowners’ association fees and mortgage insurance — the wife asserted that the husband lives in rental property and that those expenses are nonexistent.
In its final judgment, the trial court awarded the marital home to the wife, ordered the parties to sell their house in Virginia Beach, and ordered the husband to pay the mortgages on the house in Virginia Beach until that house sold. The net proceeds from the sale of the Virginia Beach house were then to be used to pay off the debt on the marital home. If any money was remaining after that debt was paid, the parties were to divide it equally.
The parties each were awarded their individual personal property, such as jewelry and clothing, and their respective family heirlooms; one-half of their collectibles, such as Swarovski crystal and Hummel, Goebel, and Lladro porcelain; one-half of the money in their individual retirement accounts and other investment and escrow accounts; and the banking accounts in their individual names. The wife’s attorney fee of $10,407.45 was to be deducted from the amount in the investment accounts before those accounts were divided. The wife was awarded the parties’ 2006 Pontiac Torrent automobile; the husband is to make the monthly pajrment of $459.70 on the Pontiac until the loan is paid in full. The husband was awarded them 2004 Lexus vehicle and their 2007 Toyota truck. The wife was also awarded all household goods, furniture, and other contents of the marital home then in her possession.
The judgment states that the parties had stipulated that the wife was to be awarded as a property settlement 47.86 percent of the husband’s net military-retirement pay. The husband received $6,081.19 in military-retirement pay each month, and the wife was to receive $2,910.45 of that amount. In addition, the husband was ordered to pay the wife $4,500 each month in periodic alimony. Each party was responsible for the credit-card debt in his or her name.
On appeal, the husband contends that the trial court exceeded its discretion in dividing the marital assets and ordering him to pay $4,500 each month in periodic alimony. Specifically, the husband asserts that the award lo the wife of the marital residence, the debt for which is to be paid off with the proceeds from the sale of the Virginia Beach house, is unjust. He also asserts that the award of alimony exceeds the wife’s needs and leaves him with insufficient funds to pay his own expenses, having a crippling effect on him.
 When a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060, 1062 (Ala.Civ.App.1995). This “presumption of correctness is based in part on the trial court’s unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor.” Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App.1999). This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial *1236 court. Somers v. McCoy, 777 So.2d 141, 142 (Ala.Civ.App.2000).
The issues of property division and alimony are interrelated, and, therefore, they must be considered together on appeal. Albertson v. Albertson, 678 So.2d 118, 120 (Ala.Civ.App.1996). When the trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Roberts v. Roberts, 802 So.2d 230, 235 (Ala.Civ.App.2001); Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993); and Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish, 617 So.2d at 1038. In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages, health, and station in life; the length of the parties’ marriage; and the source, value, and type of marital property. Robinson v. Robinson, 795 So.2d 729, 734 (Ala.Civ.App.2001). “[W]e note that there is no rigid standard or mathematical formula on which a trial court must base its determination of alimony and the division of marital assets.” Yohey v. Yohey, 890 So.2d 160, 164 (Ala.Civ.App.2004).
Other than the real property, the marital assets essentially were divided evenly between the parties. The wife received the marital home, and the loan secured by the mortgage on the house was to be paid off using the proceeds of the sale of the parties’ other real property, the Virginia Beach house. The parties anticipated that the proceeds of the sale of that house would be more than sufficient to pay off the loan secured by the mortgage on the marital home. Using the husband’s calculations, he would receive approximately $38,000 of the proceeds from the Virginia Beach house. Evidence presented indicated that, even with the wife receiving the marital home, the husband’s net award (after deducting the debts for which he is responsible from his share of the assets) would be approximately $220,605. The wife’s net award (after deducting the debts for which she is responsible from her share of the assets) would be approximately $328,080.
The parties, now in their late 50s, were married for 36 years and raised two children together. The wife supported the husband in his Army career, moving frequently both within the United States and overseas.[1] The husband acknowledged that the wife had never earned more than $20,000 in any year of their marriage. The testimony of the wife tended to indicate that her prospects for employment are poor; her testimony indicated that she has been in poor health and has been unable to work since having a second back surgery in 2006. On the other hand, the husband’s employment and earning prospects are outstanding. He testified that he had earned more money in the few *1237 years just before the trial of this matter than he ever had before.
The husband claims that the trial court’s award of alimony to the wife and the division of real property will cripple him. It is true that the wife was awarded the largest single asset of the marriage, i.e., the marital residence, and that the mortgage on that house was to be satisfied with the proceeds from the sale of the parties’ second house in Virginia Beach. However, the evidence shows that the remaining assets of the parties essentially were divided equally. The evidence indicates that, even after the wife’s share of the husband’s military-retirement pay is deducted and the husband pays alimony of $4,500, the husband will still have a monthly net income of just over $7,000. Including her portion of the husband’s retirement pay and periodic alimony, the wife’s monthly income will be approximately $7,650. The wife also was ordered to pay approximately $80,000 more in credit-card debt than was the husband.
As mentioned previously, a trial court’s division of marital assets must be equitable; it need not be equal, and a determination of what is equitable rests within the sound discretion of the trial court. George v. George, 14 So.3d 180, 188 (Ala.Civ.App.2009); and Golden v. Golden, 681 So.2d 605, 608 (Ala.Civ.App.1996). Given the length of the parties’ marriage and the husband’s numerous infidelities throughout the marriage, and considering the prospects of the husband and the wife as to future earnings, we cannot say that the trial court exceeded its discretion in its division of the parties’ assets and its award of periodic alimony to the wife.
The husband also contends that the trial court’s judgment improperly precludes him from seeking an increase in his VA disability benefits because to do so would modify his military-retirement benefits, which the final judgment expressly disallows.
In its judgment, the trial court properly deducted from the husband’s monthly military-retirement pay the amount of his “VA waiver” and the “Survivor Annuity Benefits premium.” The trial court then awarded the wife a property settlement in the amount of 47.86 percent of the remaining amount of the husband’s monthly retirement pay, as stipulated by the parties. The trial court included in its judgment the provision that the husband “shall do nothing to reduce the [wife’s] share of the same or interfere with her receipt of the same.”
The husband asserts that that provision would prevent him from seeking an adjustment to his VA disability' benefits if his disability worsens, because, he says, such an action would reduce his military-retirement benefit. Such a limiting provision in the trial court’s judgment, the husband claims, is contrary to the purpose of the Uniformed Services Former Spouses’ Protection Act (“USFSPA”), 10 U.S.C. § 1408 et seq., and violates federal law. We disagree.
The USFSPA authorizes state courts to treat a military member’s “disposable retired pay” as property subject to equitable distribution. Mansell v. Mansell, 490 U.S. 581, 584, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). “Disposable” retirement pay is defined as the military member’s monthly retirement pay minus certain enumerated deductions, including VA disability benefits[2] and annuity payments. 10 U.S.C. *1238 § 1408(a)(4). State courts lack the power to treat a military member’s VA disability payments as property subject to division in divorce cases. Mansell, 490 U.S. at 594-95, 109 S.Ct. 2023. In this case, pursuant to a stipulation of the parties, the trial court awarded the wife 47.86 percent of the husband’s “disposable retirement benefits.” The court properly deducted the amount of the husband’s VA disability benefits and the survivor’s annuity premium from the husband’s gross pay before calculating the actual dollar amount the wife was to receive each month.
The question whether a state court may prohibit a military member from unilaterally taking any action, such as waiving retirement pay in exchange for the receipt of VA disability benefits, that would result in a decrease in a spouse’s share of a division of disposable retirement pay once that share is established in a final divorce judgment is one of first impression in Alabama. However, other jurisdictions that have addressed the issue have held that such limiting provisions do not violate the USFSPA. See Scheidel v. Scheidel, 129 N.M. 223, 4 P.3d 670 (Ct.App.2000); and Hadrych v. Hadrych, 140 N.M. 829, 833, 149 P.3d 593, 597 (Ct.App.2006).
“Many jurisdictions have recognized that the USFSPA does not limit the equitable authority of a state court to grant relief to the nonemployee spouse when military retirement pay previously divided in a dissolution action is converted to disability pay. See In re Marriage of Lodeski, ... 107 P.3d [1097] at 1101 [ (Colo.Ct.App.2004) ]; see also Clauson v. Clauson, 831 P.2d 1257 (Alaska 1992) (courts need not ignore economic consequences of military retiree’s choice to waive retirement pay to receive disability); Danielson v. Evans, 201 Ariz. 401, 36 P.3d 749, 755 (Ct.App.2001) (citing with approval In re Marriage of Gaddis, 191 Ariz. 467, 957 P.2d 1010 (Ct.App.1997), for the point that nothing in USFSPA suggests that court’s final award of an interest in retirement pay must be altered when military retiree obtains postdecree civil service employment); Surratt v. Surratt, 85 Ark.App. 267, 148 S.W.3d 761, 767 (2004) (settlement agreement awarded wife vested property interest in her share of the military retirement benefits that husband could not unilaterally eliminate by waiving those benefits to receive disability benefits); Janovic v. Janovic, 814 So.2d 1096, 1097 (Fla.Dist.Ct.App.2002) (.Mansell not violated because order does not distribute disability benefits, nor will husband be required to use such benefits to satisfy the enforcement order); Black v. Black, 842 A.2d 1280, 1284-85 (Me.2004)(USFSPA does not limit authority of state court to grant postjudgment relief when military retirement pay previously divided is converted to disability pay, so long as the relief awarded does not itself attempt to divide disability pay as marital property); Krapf v. Krapf, 439 Mass. 97, 786 N.E.2d 318, 325 (2003) (court of equity will not sanction voluntary action by the husband that amounts to an evasion of the spirit of the bargain reached with the wife); Johnson v. Johnson, 37 S.W.3d 892, 897-98 (Tenn.2001) (USFS-PA not violated by preventing husband from taking action to frustrate wife’s receipt of her vested interest in his military retirement benefits).”
In re Marriage of Warkocz, 141 P.3d 926, 929-30 (Colo.Ct.App.2006). The rationale *1239 behind many of the above-cited cases and the opinions cited in In re Marriage of Warkocz is that “one spouse should not be permitted to benefit economically in the division of property from a factor or contingency that could reduce the other spouse’s share, if that factor or contingency is within the first party’s complete control.” Scheidel, 129 N.M. at 226, 4 P.3d at 673. In other words, courts have found that to allow one party, after judgment, to unilaterally reduce the other party’s award of retirement benefits would be inequitable. As the Alaska Supreme Court stated in Clauson v. Clauson, “neither the USFS-PA nor prior Supreme Court decisions require our courts to completely ignore the economic consequences of a military retiree’s decision to waive retirement pay in order to collect disability pay.” 831 P.2d 1257,1263 (Alaska 1992).[3]
We agree with the reasoning of those courts from other jurisdictions that have held that a state court may properly limit a military member’s ability to unilaterally modify the benefits owed to a former spouse from the member’s retirement pay. Thus, we conclude that federal law neither preempts nor otherwise bars the trial court’s inclusion in its final divorce judgment of the provision aimed at ensuring that the division of property established in that judgment is protected.[4] Because no attempt has been made to adjust the husband’s disposable retirement pay, application of that provision is not an issue before this court. Our holding reaches only the efficacy and legality of the provision at issue.
For the reasons stated above, the judgment of the trial court divorcing the parties, dividing the parties’ marital assets, and awarding the wife periodic alimony is due to be affirmed.
Both the husband’s and the wife’s requests for attorney fees on appeal are denied.
AFFIRMED.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.

. As the United States Senate Committee that initially considered the federal Uniformed Services Former Spouses' Protection Act, 10 . U.S.C.A. § 1408 et seq., discussed infra, pointed out, "frequent change-of-station moves and the special pressures placed on the military spouse as a homemaker make it extremely difficult to pursue a career affording economic security, job skills and pension protection." Senate Report No. 97-502 (1982), reprinted in 1982 U.S.C.C.A.N. 1596, 1601; see also Mansell v. Mansell, 490 U.S. 581, 594, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

. Veterans who receive disability benefits from the VA must waive a corresponding amount of their military retirement pay, to prevent “double dipping.” Mansell, 490 U.S. at 583, 109 S.Ct. 2023; 38 U.S.C. § 3105. The disability payments are exempt from fed *1238 eral, state, and local taxation; thus, many military retirees waive their retirement pay in favor of disability pay, which increases their after-tax income. Mansell, 490 U.S. at 583-84, 109 S.Ct. 2023.

. The husband cites Ex parte Burson, 615 S.W.2d 192 (Texas 1981), in support of his argument that the provision in the judgment precluding him from reducing or interfering with the wife’s share of the husband's disposable retirement pay is contrary to federal law. We note that Burson was decided in 1981, before Congress passed the USFSPA and before the Supreme Court's decision in Mansell interpreting the USFSPA. Accordingly, we do not find that case to be instructive as to this issue.

. We note that the rationale behind this holding is consistent with our supreme court’s earlier opinions noting that federal law does not require a trial court to turn a blind eye toward income from disability benefits when fashioning or calculating an award of alimony; the trial court may consider a veteran's disability benefits as a source of income in an award of periodic alimony. See Ex parte Billeck, 777 So.2d 105, 108 (Ala.2000) (and cases cited therein). In this case, the husband has income from other sources so that he would not have to use his VA disability income to ensure that the wife continues to receive her share of retirement benefits.