THOMPSON, Presiding Judge.
P.N.M. (“the wife”) filed a complaint seeking a divorce from K.W.M. (“the husband”). In her complaint, the wife sought an award of custody of the two minor children of the marriage, a division of the marital assets and debts, an award of alimony, and an award of an attorney fee. In her complaint, the wife sought a divorce on the ground of incompatibility.
The parties reached an agreement regarding pendente lite support. On May 24, 2010, the trial court entered an order incorporating the terms of the parties’ agreement; that order provided that the husband deposit into the parties’ joint checking account the amount of $3,500 every two weeks and that the wife was to pay certain household expenses from those funds.
On March 9, 2011, the husband answered and counterclaimed for a divorce seeking an award of joint custody of the parties’ children and an equitable division of the parties’ assets. In his counterclaim, the husband alleged that the wife had committed adultery during the marriage. We note that, during the final hearing in this *1182 matter, the wife alleged adultery on the part of the husband.
On March 14, 2011, the trial court entered an order requiring the husband to endorse to the wife a check for $16,000 to compensate her for an arrearage in pen-dente lite support. In that March 14, 2011, order, the trial court also ordered the husband to comply with discovery requests by March 24, 2011, and it ordered the husband pay $100 per day as a sanction for every day after March 24, 2011, that the husband failed to produce responses to discovery.
The trial court conducted an ore tenus hearing over the course of four days. On December 28, 2011, the trial court entered a judgment in which it divorced the parties, awarded custody of the children to the wife subject to the husband’s visitation rights, fashioned a property division and alimony award, and awarded the wife an attorney fee. The husband filed a post-judgment motion and a request that the trial court stay enforcement of the divorce judgment. The trial court entered a post-judgment order denying those requests, and the husband timely appealed.
The parties married in 1995. Two children, ages 17 and 15 at the time of the ore tenus hearing, were born of the parties’ marriage. The parties separated in April 2010. The parties agreed that the wife would receive primary physical custody of the children and that the husband would receive visitation with the children. Thus, the testimony of the witnesses and the approximately 540 pages of exhibits that were admitted into evidence over the course of the 4-day divorce hearing focused on the parties’ claims pertaining to the division of marital assets and debt, alimony, and attorney fees.
The wife has a doctorate degree in biological anthropology, and she has worked in the past as a college professor. The wife left her job as a professor to rear the parties’ children, and she assisted the husband for several years in the business he started. The wife worked at a private school as a teacher from 2007 through 2009.
The wife was diagnosed with multiple sclerosis approximately 17 years ago, although she has not yet experienced severe symptoms of that disease. The wife testified, however, that she becomes fatigued in the afternoons and that she often suffers from migraines. The wife testified that she was willing to seek employment but that she needed a job that would allow her to be home when the parties’ children were out of school and that would accommodate her fatigue and migraines.[1]
The wife testified that, during the pen-dency of the divorce litigation, she had attempted to locate employment from several sources and had either not been offered the job or had decided not to accept an offer of employment. The wife testified that one job in which she had been interested would have required her to travel, and she stated that she was unable to do that because she needed to be home for the children.
At times during the pendency of this action, the wife worked part-time for a friend, Robert Smith. The wife testified that she stopped working for Smith a month before the divorce hearing because, she said, he no longer needed her help. The wife acknowledged that she had testified during her deposition that Smith was *1183 to pay her $25 per hour plus a commission. However, at the time of the deposition, although she had been working for Smith for four months, the wife had not yet received a paycheck. At the final hearing, the wife testified that she had worked on a “barter system” for Smith; she explained that Smith had purchased groceries for her and the children.
The record indicates that the wife had some sort of personal relationship with Smith. In addition, the husband presented evidence indicating that the wife had photographs of a naked man and other photographs of herself at least partially naked on her cellular telephone and on her computer. The evidence might support a conclusion that the wife had an extramarital relationship with the husband of the husband’s sister. When asked by the husband whether she had a sexual relationship with Smith or any other man, the wife refused to answer, citing the Fifth Amendment.
The husband had worked for approximately 13 years as a police officer. He met the wife while he was pursuing his bachelor’s degree in physical therapy. The husband had worked as a physical therapist for a period. In 2003, the husband started a business, Solutions Therapy (“the business”), that provides physical-therapy and occupational-therapy services on a contract basis. The business is incorporated as a subchapter S corporation.
For approximately two to three years, the husband operated the business out of the parties’ home, and he later moved the business to an office building. The husband employed the wife and at least two other administrative employees in the business. In addition, at one time, the business had 60 to 70 therapists who worked as independent contractors. In addition to operating the business, the husband testified that he works as a physical therapist and an occupational therapist for the business.
The wife testified that, while they were working together to operate the business, the husband often yelled at her; she also stated that he fired her and rehired her several times. Two former employees who testified supported the wife’s testimony that the husband had a quick temper and often yelled at the wife and other employees. In addition, when questioned as to whether he had engaged in an extramarital affair with one of his employees or independent contractors during the parties’ marriage, the husband refused to answer, citing the Fifth Amendment.
The husband testified at the divorce hearing that, at that time, the business had “a lot fewer” contracts pursuant to which the business would provide services to certain companies or health-care agencies. Later testimony established that the business had lost only one former contract client, although that client, according to the husband, had accounted for a significant portion of the business’s income. A May 2011 letter to the business from that client cited the husband’s discussion with its patients of his pending divorce as the basis for its decision to terminate that contract. The husband testified that the client had actually hired away from the business a number of the people the business had used as independent contractors, and, therefore, he stated, the reason offered by the client for terminating the contract with the business was not accurate. However, the husband also testified that he had and would continue to discuss personal matters such as the divorce with his patients. With regard to the business’s remaining contracts, the husband testified that his business had been drastically reduced because of 2009 changes to Medicare reimbursement.
*1184 The record indicates the gross income of the business for the tax years 2004 through 2009, with the exception of 2005, for which the parties could not locate records. The business had gross income of $272,474 in 2004; $1,515,367 in 2006; $2,435,177 in 2007; $2,929,479 in 2008; $2,201,874 in 2009; and $1,048,120 in 2010.
Bonnie Dawson, the accountant hired by the business to prepare its tax returns, testified that in every year except 2004 the business had posted losses. She stated that the business had a $36,642 profit in 2004. The approximate losses for the remaining years were $82,000 in 2006, $93,000 in 2007, $48,000 in 2008, $85,000 in 2009, and $75,278 in 2010. Dawson testified that because the business was a sub-chapter S corporation, the losses were reported on the husband’s personal income-tax returns and that they operated to offset the income paid to the husband from the business. Dawson also testified that she prepared the business’s tax returns based on the financial information provided to her by the husband and that she did not audit the information provided to her by the husband to determine its accuracy.
The record contains personal income-tax returns for the parties for the years 2008, 2009, and 2010. Those returns indicate that the parties’ combined gross income was $193,770 in 2008 and $209,568 in 2009.[2] The personal income-tax return filed by the parties in 2010 indicates that the husband’s gross income was $158,166. In addition, in 2010, the parties received an $18,000 federal income-tax refund and a $5,000 state income-tax refund. The husband received and retained those income-tax refunds.
The husband attempted to present evidence indicating that those figures did not accurately reflect his income because, he stated, he made loans to the business to keep it operational. Dawson testified that, as of 2010, the business’s records indicated that those loans had accumulated to a total of $112,742. The husband testified that he often paid himself so that he would be taxed on that income but that he then returned that money to the business so that it would have funds with which to operate. We note that the trial court stated that the husband’s testimony about that purported practice did not make sense.
The wife presented evidence to dispute the husband’s claim that the business had begun to deteriorate financially. The wife presented evidence indicating that between January 2008 and January 2011 $365,731 had been deposited into the parties’ joint checking account to pay household expenses; that amount averages to approximately $121,000 per year. As the husband pointed out, that amount does not reflect only the parties’ earnings through wages; it includes amounts transferred to the parties’ personal account from the business to cover what he stated were overdrafts on the personal account.[3]
In addition, on questioning from the wife, the husband denied having told the wife during the pendency of the divorce action that he would bankrupt the business and rebuild it after the divorce. The wife *1185 submitted into evidence an April 2010 email from the husband to her in which the husband stated: “After [Solutions] bankrupts, I will start Solutions II and be bigger than Solutions ever was.” The husband admitted that he wrote that e-mail. In addition, in a May 2011 e-mail encouraging the wife to consider a settlement offer, the husband stated: “Please don’t wait to address this until I am sitting in a bankruptcy attorney’s office” and “[pjlease just be done with this so we can all get on with our lives and the house won’t be involved with the bankruptcy.”
In addition to the business, the parties have other marital assets. The parties valued the marital home at between $185,000 and $190,000. That home is subject to mortgage indebtedness of $90,000. In addition, the parties have a home-equity loan balance of $50,000 and another loan secured by the marital home with a balance of approximately $14,000. The husband testified that he used the $50,000 home-equity loan to meet various expenses of the business, as needed, and that he would be responsible for that debt.
The wife presented evidence indicating that the husband had a retirement account with a value of $24,154, and a whole-life insurance policy with a death benefit of $115,779 and a cash value of $15,879. The parties each have a vehicle and certain personal property, but neither party presented evidence regarding the values of that property.
The wife testified that, during the parties’ marriage, she inherited from her aunt and uncle a total of approximately $125,000. The wife testified that she had not informed the husband of that inheritance, although the interest from the account in which the money was held was reported on the parties’ joint income-tax returns. On questioning by the trial court, the wife testified that she had not used the inheritance for the common benefit of the marriage. The wife stated that she had used some of the money from that inheritance during the parties’ marriage to purchase a tuba for the parties’ son in February 2010, shortly before the parties separated. The wife testified that, after the parties’ separation, she had often used money from the inheritance to meet her expenses. The wife testified that, at the time of the divorce hearing, she believed that approximately $89,000 of the inheritance remained, and she stated that she intended to use that money to pay for the children’s college educations. The record indicates that the parties had purchased Prepaid Affordable College Tuition (“PACT”) plans for each of the parties’ children. However, the wife testified that the parties’ son is a talented musician who hoped to attend a musical conservatory for which the PACT plan will pay only a portion of the tuition.
As an initial matter, we note that the issues raised on appeal all pertain to whether the evidence supports the trial court’s judgment.
“When a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060, 1062 (Ala.Civ.App.1995). This ‘presumption of correctness is based in part on the trial court’s unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor.’ Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App.1999). This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court. *1186 Somers v. McCoy, 777 So.2d 141, 142 (Ala.Civ.App.2000).”
Stone v. Stone, 26 So.3d 1232, 1235-36 (Ala.Civ.App.2009).
On appeal, the husband first argues that the trial court erred in determining his child-support obligation. The husband first argues that the trial court erred in determining the parties’ incomes for the purpose of calculating the husband’s child-support obligation. In its divorce judgment, the trial court specifically stated that it was imputing income to each of the parties.
A trial court may impute income to a voluntarily unemployed or underemployed parent.
“If the court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income; the court shall calculate child support based on that parent’s imputed income. In determining the amount of income to be imputed to a parent who is unemployed or underemployed, the court should determine the employment potential and probable earning level of that parent, based on that parent’s recent work history, education, and occupational qualifications, and on the prevailing job opportunities and earning levels in the community. The court may take into account the presence of a young or physically or mentally disabled child necessitating the parent’s need to stay in the home and therefore the inability to work.”
Rule 32(B)(5), Ala. R. Jud. Admin. A determination as to whether a parent is voluntarily underemployed or unemployed is within the discretion of the trial court. Bittinger v. Byrom, 65 So.3d 927, 933 (Ala.Civ.App.2010); Clements v. Clements, 990 So.2d 383, 394 (Ala.Civ.App.2007); and Van Houten v. Van Houten, 895 So.2d 982, 986 (Ala.Civ.App.2004). In imputing income to a parent, the trial court is not required to make an express determination that the parent is voluntarily unemployed or underemployed. Bittinger v. Byrom, 65 So.3d at 933-34.
Both parties submitted to the trial court the income affidavits required by Rule 32, Ala. R. Jud. Admin. The wife represented that she was currently unemployed and that her gross income from her last employer, the private school, was $2,032.73 per month. The trial court used that figure to impute income to the wife for the purpose of calculating child support. The husband contends that the trial court should have imputed a greater level of income to the wife. The husband argues that the wife presented evidence indicating that she had been earning $25 per hour from Robert Smith during the pendency of the divorce litigation and that the trial court should have imputed that hourly rate to her for a 40-hour workweek in order to determine the wife’s gross monthly income for the purposes of calculating child support. However, the trial court also received testimony indicating that the wife was never paid that amount by Smith and had instead been compensated on a “barter system” pursuant to which Smith had paid for her groceries. There was no evidence regarding the value of those groceries. Further, the wife testified that her employment with Smith had been part-time. The wife presented evidence that would support a determination that she is not capable of full-time employment because of her health and that it is necessary or advisable for a parent to be home in the afternoons to supervise the parties’ children because of the parties’ unique circumstances. “The trial court is in the best position to observe the demeanor of witnesses and to assess their credibility.” *1187 Yellow Freight Sys., Inc. v. Green, 612 So.2d 1209, 1211 (Ala.Civ.App.1992). Given the facts of this case and the presumption in favor of the trial court’s judgment, we cannot say that the husband has demonstrated that the trial court erred in not imputing a greater level of gross monthly income to the wife for the purpose of calculating the husband’s child-support obligation. Clements v. Clements, supra; Mitchell v. Mitchell, 69 So.3d 904, 906-07 (Ala.Civ.App.2011); and Stone v. Stone, supra.
With regard to child support, the husband also argues that the trial court erred in imputing income to him. On his Rule 32 income affidavit, the husband represented that his gross monthly income was $4,521.49, which is equivalent to a gross annual salary of approximately $54,000. In its divorce judgment, however, the trial court imputed income to the husband and determined his gross monthly income to be $23,571.85, which is equivalent to a gross annual salary of approximately $282,800. The trial court stated in its judgment that it based its determination of the husband’s gross monthly income on the amount stated on the Form 1099 issued to the husband by the business for the purpose of determining the business’s 2010 income taxes. The husband contends that the trial court erred in using the income of the business to determine his income for the purpose of calculating child support.
On appeal, the wife agrees that the business income reflected on the Form 1099 should not have been used to determine the husband’s income for child-support purposes. However, the wife contends that the trial court could validly have imputed that level of income to the husband based upon a determination that the husband was misrepresenting his income and that the husband was commingling his personal funds with those of the business. The record indicates that between January 2008 and December 2010 the husband deposited more than $363,0000, or approximately $121,000 per year, into the parties’ joint account to meet household expenses. The husband’s 2010 tax return reflects annual gross income of $158,166. Tax returns from earlier years demonstrate that the husband’s income had been greater in those years than the income he received in 2010.
In addition, as the wife notes, the evidence indicates that the husband commingled his personal finances with those of the business and that he often used money from the business to pay personal expenses. The husband testified that, at the time of the divorce hearing, the business paid almost all of his expenses. Also, the record supports a conclusion that the husband was attempting to minimize the business’s income or bankrupt the business during the divorce proceedings.
The trial court correctly concluded that “[tjhere was substantial evidence that the [husband] has co-mingled funds from the [business] and the family’s personal accounts, so that it is difficult to determine the [husband’s] actual income.” In addition, our review of the husband’s testimony indicates that the record fully supports the trial court’s determination that the husband “came to [the trial court] unprepared and evasive as to many facts.”[4] See Ex *1188 parte Fann, 810 So.2d 631, 636 (Ala.2001) (“Moreover, ‘[bjecause the trial court has the advantage of observing the witnesses’ demeanor and has a superior opportunity to assess their credibility, [an appellate court] cannot alter the trial court’s judgment unless it is so unsupported by the evidence as to be clearly and palpably wrong.’” (quoting Ex parte D.W.W., 717 So.2d 793, 795 (Ala.1998))). It is apparent that the trial court disbelieved the husband’s claim that his actual income had decreased from earlier levels to a projected income in 2011 of only $4,500 per month, or $54,000 annually. We note that the husband’s estimate, made for child-support purposes, of his gross monthly income as being $4,500 per month does not include the amounts the husband used from the business to pay his personal expenses.' Although he denied knowing the amounts he had used to pay his personal expenses from business accounts, the husband testified that he intended to repay those amounts. However, given the husband’s history of commingling business and personal money, together with the trial court’s perception of the husband’s credibility, the trial court was not required to believe that testimony.
However, we conclude that the trial court erred in basing its determination of the husband’s gross income on the Form 1099 issued for income-tax purposes; the wife concedes that the trial court’s reliance on that form was incorrect, and, because the business is a subchapter S corporation, that form does not appear to be related to income actually received by the husband. In so holding, however, we note that the trial court, in redetermining the amount of the husband’s gross monthly income, is not required to base its child-support determination on the income level advanced by the husband. The record supports the trial court’s finding that the husband’s testimony was evasive. The evidence also supports the finding, implicit in the trial court’s decision to impute income to the husband, that the husband was not truthfully representing his income and/or was voluntarily underemployed. Accordingly, although we are reversing the trial court’s finding imputing a specific amount of income to the husband, we agree with the wife and the trial court that some greater level of income than the husband claimed is to be imputed to the husband on remand.
We note that, as part of his argument pertaining to the trial court’s determination of his child-support obligation, the husband also contends that the trial court erred in failing to include in its calculation the amount the business pays for the family’s health-insurance coverage. The husband concedes that the business pays the health-insurance premium in its entirety, but he contends that, because -he is the business’s “primary employee,” he should be credited on the determination of his child-support obligation as if he was the one making that payment. The husband has cited no authority in support of that argument, in contravention of Rule 28(a)(10), Ala. R.App. P. The husband’s failure to properly support his argument on appeal leaves this court with nothing to review and precludes our consideration of the argument. Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007); see also Lockett v. A.L. Sandlin Lumber Co., 588 So.2d 889, 890 (Ala.Civ.App.1991) (“This court will address on appeal only those issues presented and for *1189 which supporting authorities have been cited to the court.”).
The husband next raises several issues pertaining to the trial court’s division of property and alimony award. As part of his arguments on these issues, the husband argues that the trial court erred in requiring him to name the wife as the beneficiary on a term life-insurance policy. In his brief on appeal, the husband cites to authority supporting his argument that that policy is not a marital asset. See Thomas v. Thomas, 54 So.3d 346 (Ala.Civ.App.2009).[5] In response, the wife contends that although the husband contested the award requiring that she be named as the beneficiary of the term life insurance policy in his postjudgment motion filed in the trial court, the husband did not contend to the trial court, as part of his argument pertaining to that award, that the life-insurance policy was not a marital asset. Therefore, the wife argues, the husband has impermissibly raised for the first time on appeal the issue whether the term life-insurance policy was a marital asset subject to a property division incident to the divorce. We have reviewed the argument asserted by the husband in his postjudgment motion, and we agree with the wife that it does not preserve the issue that the husband raises on appeal that the term life-insurance policy did not constitute a marital asset subject to a property division. Accordingly, we conclude that the husband has failed to preserve that issue for appellate review. Hollander v. Nance, 888 So.2d 1275, 1278-79 (Ala.Civ.App.2004) (“It is axiomatic that an argument presented for the first time on appeal has not been preserved for review; our review is restricted to the evidence and the arguments considered by the trial court.”).
The husband also argues that the trial court’s property division and alimony award were inequitable. The issues of property division and alimony are interrelated, and they must be considered together on appeal. Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993). Accordingly, we consider the husband’s arguments on these issues together.
A trial court’s determination regarding a property division and an award of alimony is entitled to a presumption of correctness on appeal and will not be reversed absent a showing of plain and palpable error. Roberts v. Roberts, 802 So.2d 230 (Ala.Civ.App.2001); Stone v. Stone, supra; and Parrish v. Parrish, supra. In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages, health, and stations in life; the length of the marriage; and the source, value, and type of marital property. Robinson v. Robinson, 795 So.2d 729 (Ala.Civ.App.2001). Also, in fashioning its property division and its alimony award, a trial court may consider a party’s conduct with regard to the breakdown of the marriage, even when the parties are divorced on the basis of incompatibility. Nichols v. Nichols, 824 So.2d 797 (Ala.Civ.App.2001). Although a property division is not required to be equal, it must be equitable in light of the particular circumstances of the case. Id.
In its property division, the trial court awarded the wife the marital home valued at approximately $190,000, subject to the $90,000 first mortgage on the home. The trial court ordered the husband to pay the $50,000 home-equity line of credit secured *1190 by the marital home and used by the husband in his business, and for which the husband conceded during the divorce hearing that he should be responsible. The husband was also ordered to pay a $14,000 loan obtained to make certain improvements to the home, and to pay the parties’ unsecured credit-card indebtedness; the parties presented no evidence regarding the amount of that credit-card indebtedness. The trial court awarded the husband his individual retirement account valued at $41,862, an annuity valued at $24,154, the business, and the property on which the business was located. In addition, the trial court ordered the husband to pay the wife $6,000 per month in rehabilitative alimony for a total of 60 months and “$11,325.20, which is one-half of the cost of musical instruments purchased” for the parties’ son. The trial court awarded the wife the bank accounts in her name, which included an award of the inheritance she received from her aunt and uncle.
The husband first maintains that the trial court erred in awarding the wife the inheritance. We note that, in their briefs submitted to this court, both parties assume that the trial court determined that the inheritance was a part of the wife’s separate estate. For that reason, we address the issue as framed by the parties.
As the husband contends, property or money acquired by one spouse by inheritance or gift may be considered in a property division or alimony award if that property or money is regularly used for the common benefit of the parties. Currie v. Currie, 550 So.2d 423, 425 (Ala.Civ.App.1989). Section 30-2-51(a), Ala.Code 1975, provides:
“(a) If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse’s family. Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage.”
The husband asserts briefly that the wife used her inheritance for the common benefit of the marriage. As he points out, the wife testified that she used the money from her inheritance shortly before the parties separated to purchase a tuba for the parties’ son. On questioning from the trial court, the wife stated that she had used money from the inheritance only the one time to purchase the musical instrument for the parties’ son and that she had not otherwise used her inheritance for the common benefit of the parties during the marriage.
A one-time or limited use of inherited property does not require that the property be considered marital property subject to a property division as part of a divorce action; this court has explained:
“The trial judge is granted broad discretion in determining whether property purchased before the parties’ marriage or received by gift or inheritance was used ‘regularly for the common benefit of the parties during the marriage.’ See § 30-2-51, Ala.Code 1975. Even if the trial court determines that such property was regularly used for the common benefit of the parties during the marriage, the determination whether to include such property in the marital assets *1191 to be divided between the parties lies within the discretion of the trial court.”
Nichols v. Nichols, 824 So.2d at 802.
In this case, the wife testified that she had used the money from her inheritance one time before the parties separated. The husband has not asserted an argument tending to indicate other instances in which the inheritance was used for the common benefit of the marriage. Under § 80-2-51 and Nichols v. Nichols, supra, the trial court had the discretion to determine that the wife’s limited use of the money from her inheritance during the marriage was not made for the “common benefit of the parties.” We conclude that the husband has failed to demonstrate that the trial court abused its discretion in determining that the wife’s inheritance was not a marital asset subject to inclusion in its division of the parties’ marital property.
The husband also contends that the trial court’s property division was inequitable. In the divorce judgment, the trial court awarded the wife the marital home, subject to its first-mortgage indebtedness, so that asset has equity of approximately $100,000. In addition, the trial court awarded the wife the expected proceeds of a term life-insurance policy, a whole life-insurance policy with a current value of approximately $14,000, certain personal property, and $6,000 per month in alimony for five years.[6] The record contains no accurate valuation of the business awarded to the husband,[7] and the husband testified that he did not know the value of the property on which the business was located. However, it is clear that, until the pendency of the divorce action, the business had enabled the parties to lead a comfortable lifestyle. Given the lack of evidence on the specific value of the business, among other assets, it is impossible for this court to determine the total relative valuations of the marital assets awarded to each party. It was the burden of the husband, as the appellant, to ensure that the record on appeal contained sufficient evidence to warrant a reversal on this issue, Kimbrough v. Kimbrough, 963 So.2d 662, 665 (Ala.Civ.App.2007); Goree v. Shirley, 765 So.2d 661, 662 (Ala.Civ.App.2000); the husband has not met that burden.
The husband also contends that, in awarding alimony, the trial court failed to consider the wife’s conduct. See Ex parte Drummond, 785 So.2d 358, 363 (Ala.2000) (a trial court may consider a party’s conduct with regard to the breakdown of the marriage in fashioning a property division and alimony award, even when the parties are divorced on the ground of incompatibility). The husband argues that it is clear, because she refused to answer questions during the final hearing regarding possible adultery, that the wife had, in fact, committed adultery. In asserting that argument, the husband fails to acknowledge that he also asserted the Fifth Amendment when asked by the wife’s attorney whether he had engaged in an extramarital affair. Also, the wife presented evidence indicating that the husband had a volatile temper during their marriage. The evidence supports a determination that both parties were at fault with regard to the breakdown of the marriage, and the trial court’s finding that the parties were to be divorced on the ground of incompatibility tends to indicate that it found that *1192 neither party was more at fault than the other.
As part of his argument on the issue of alimony, the husband also contends that, even assuming the inheritance was a part of the wife’s separate estate, that separate estate may be considered in determining whether to award the wife alimony. Lewis v. Lewis, 416 So.2d 755, 758 (Ala.Civ.App.1982). Even considering the value of the wife’s inheritance as her separate estate, we are unable to say that the husband has demonstrated on appeal that the trial court erred in its property division and alimony award. The husband bases most of his argument pertaining to the award of alimony on his contention that he lacks sufficient income to pay the alimony award. As discussed earlier in this opinion, the trial court appears to have disbelieved that testimony and concluded that the husband’s income was, or had the potential to be, far greater than that to which he testified. We note that, in this opinion, this court has reversed the trial court’s determination of the husband’s gross monthly income for the purposes of child support based on the trial court’s reliance on a particular form; this court has not held that the trial court necessarily would be in error by imputing a similar level of income to the husband. The fact that we are reversing the trial court’s judgment for a redetermination of the husband’s gross monthly income for the purpose of determining his child-support obligation does not mandate a reversal of the property-division and alimony award on the basis that the trial court has not made a specific finding regarding the husband’s income. There is no requirement that a trial court make such a finding as part of a property division, and this court may presume that, in fashioning its property division and alimony award, the trial court made those findings necessary to support its judgment. Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996).
The evidence indicates that the husband’s income from his business has been much greater in years past than the amount he stated he would receive in 2011. In addition, the evidence in the record on appeal supports a conclusion that the husband threatened the wife with placing the business in bankruptcy and starting another business in its place after the divorce proceedings ended. Thus, we conclude that the record supports a conclusion that the husband was financially capable of paying the alimony award fashioned by the trial court. The husband failed to present evidence concerning the value of the business, and, therefore, this court is unable to determine whether the trial court’s award of marital property and alimony was inequitable.
The purpose of rehabilitative alimony is to allow a spouse to begin or resume supporting himself or herself. Alfred v. Alfred, 89 So.3d 786 (Ala.Civ.App.2012); Enzor v. Enzor, 98 So.3d 15, 21 (Ala.Civ.App.2011). In this case, the wife has several health issues that may restrict her ability to work. In addition, she testified that she wanted to find employment that would allow her to be available to supervise the parties’ minor children, particularly the daughter, after school. The evidence supports a conclusion that the husband’s business was successful and that, until the divorce action was filed, the income from the business enabled the parties to enjoy a comfortable lifestyle. It appears from the language used in the divorce judgment that the trial court did not believe the husband’s testimony that he expected his income to be reduced drastically. The husband failed to present evidence regarding the value of his business. Therefore, this court is unable to determine whether, in light of the property *1193 division, the trial court’s 60-month rehabilitative-alimony award was inequitable under the circumstances of this case. Given the facts of this case and the findings in the divorce judgment, and noting that issues of property division and alimony must be considered together, this court cannot say that the husband has demonstrated that the trial court erred in reaching its property-division and alimony awards.
The husband last argues on appeal that the trial court erred in awarding the wife an attorney fee for her first attorney, who was disbarred during the pen-dency of the divorce hearing. “This court reviews an award of an attorney fee on an abuse-of-discretion standard.” Mahaffey v. Mahaffey, 806 So.2d 1286, 1292 (Ala.Civ.App.2001). In determining whether to award an attorney fee and the amount of the fee, the trial court must consider factors such as the earning capacities of the parties, the results of the litigation, the parties’ financial circumstances, and the conduct of the parties. Korn v. Korn, 867 So.2d 338, 347 (Ala.Civ.App.2003); Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996).
The portion of the divorce judgment at issue provides that the husband pay the attorney who represented the wife at the final hearing an attorney fee of $18,160. In addition, the trial court ordered the husband to pay the wife $12,250.11 “as reimbursement of her other legal expenses,” which included the $5,000 retainer fee the wife paid her initial attorney.[8]
The husband does not argue on appeal that the trial court erred in awarding the wife’s current counsel the' $18,160 fee. Rather, he argues that the award of $12,250.12 is not supported by the evidence. The wife concedes that that award is not fully supported by the evidence. She contends that she paid her initial attorney, who was later disbarred, a retainer of $5,000 and that she had additional legal expenses of $2,466.11. Thus, it is clear that, at least to the extent that the attorney-fee award is not supported by the evidence, it is due to be reversed and the case remanded for the trial court to redetermine whether to award such an attorney fee and, if so, the proper amount of that fee.
With regard to the husband’s argument that the trial court abused its discretion in ordering him to be responsible for that part of the wife’s attorney fee for her initial attorney, the husband contends that he cannot afford to pay that amount. Given our reversal of a portion of the attorney-fee award, we pretermit discussion of this issue.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, J., concurs.
BRYAN and THOMAS, JJ., concur in the result, without writings.
MOORE, J., concurs in part, concurs specially in part, and concurs in the result in part.

. The record indicates that the parties’ 15-year-old daughter has struggled with depression and was hospitalized for a period during the pendency of this action. The wife testified that, although the daughter’s condition has improved, she believed that it was necessary that she be home to supervise the daughter when possible.

. The record indicates that the wife was employed at a private school during those years.

. The husband testified that the wife routinely caused the parties’ personal bank account to become overdrawn, and he testified that those overdrafts exceeded $100,000 in three years. As the trial court noted, the husband was unable to submit evidence to support that claim because of his failure to comply with the court order requiring each party to give to the other a list of proposed witnesses and exhibits. We also note that the wife testified that the husband often directed her to write checks when insufficient funds were in the parties' account and that, on those occasions, the husband told her that he would “cover it.”

. The record indicates that the trial court entered an order specifying that the husband be fined $100 per day if he continued to fail to respond to discovery requests by a certain date. Later, the husband failed to comply with a trial court order requiring the parties to submit to each other a list of exhibits each planned to introduce during the trial of this matter. Therefore, the trial court sustained the wife's objections to the husband’s at *1188 tempts to have certain documents admitted into evidence. The husband has not appealed that ruling.

. We make no determination regarding the merits of the husband’s argument on this issue.

. The parties did not present evidence regarding the value of personal property allocated in the divorce judgment.

. The husband’s accountant testified that a tax document purporting to establish a $340,000 valuation of the business was not an accurate reflection of the business's true value for a number of reasons.

. We note that the trial court also ordered that, “[i]n the event that the [wife] is reimbursed by the Alabama State Bar Association, the [wife] shall return these funds to the [husband].”